THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

WAYNE MUEHLBAUER, COREY
BISSON, RENEE FALES
AND CHARLES HEATH, individually,
and on behalf of all others similarly
situated,

               Plaintiffs,

     -v-

GENERAL MOTORS CORPORATION,

               Defendant.

Civ. No.  05-cv-02676

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... vi

PRELIMINARY STATEMENT ................................................................... 1

STATEMENT OF FACTS .......................................................................... 1

    A Primer On Abs Brakes ...................................................................... 1

    The Defect .......................................................................................... 2

    GM Has Known Of The Existence Of The Design Defect Since At Least 1999 ............. 4

    GM Failed To Disclosed The Existence Of The Defect Until 2005 ................................. 5

    GM's Proposed Remedy Does Not Cure The Defectively Designed Vehicles ................. 6

ARGUMENT ............................................................................................. 6

    I.   Standard Of Review .................................................................... 6

    II.  Plaintiffs Have Stated A Cause For Unjust Enrichment ............................... 7

        A.  Plaintiffs Have Stated A Claim For Unjust Enrichment Because There Is No Requirement That Plaintiffs Allege The Conferral Of A Direct Benefit Upon GM ......................................................... 8

            i.   California ...................................................................... 8

            ii.  Illinois ........................................................................ 8

            iii. Maine ......................................................................... 9

            iv. Rhode Island ................................................................ 9

        B.  GM's Limited Recall Does Not Render Plaintiffs' Claims For Unjust Enrichment Moot Because Plaintiffs Have Alleged That GM's Limited Recall Is Incomplete and Otherwise Inadequate ................................... 10

        C.  A Limited Warranty Between GM and Plaintiffs Does Not Preclude Plaintiffs From Pleading An Unjust Enrichment Claim ....................................... 11

III.    Plaintiffs Have Adequately Pled That GM Breached The Implied Warranty of Merchantability ........................................................................ 13

    A.  Plaintiff Soohoo Has Provided GM With Notice Of The Defective ABS.................. 14

    B.  Plaintiffs' Complaint Serves As Adequate Notice Of The Defect ............................ 14

    C.  Plaintiffs Have Pled That The Vehicles Are Not Merchantable................................ 16

III.    PLAINTIFF MUEHLBAUER HAS STATED A CAUSE OF ACTION UNDER
    THE ILLINOIS CONSUMER FRAUD ACT ................................................................ 19

    A.  Plaintiff Muehlbauer's ICFA Claim Is Based On GM's Failure To Disclose The
        Defect Inherent In the Vehicles, Not On GM's Misrepresentations........................... 20

    B.  Plaintiff Muehlbauer Has Alleged Actual Damages................................................... 21

    C.  Plaintiff Muehlbauer Has Alleged Proximate Cause .................................................. 23

    D.  Plaintiff Muehlbauer Has Satisfied Fed. R. Civ. Proc. 9(b) ....................................... 24

IV.    PLAINTIFF FALES HAS STATED A CAUSE OF ACTION UNDER THE
    CONSUMER LEGAL REMEDIES ACT ........................................................................ 25

    A.  The CLRA Allows For Causes Of Actions Based On An Omission........................... 26

    B.  Plaintiff Fales Need Not Alleged A Duty To Disclose................................................. 27

    C.  Plaintiff Fales Has Satisfied Fed. R. Civ. P. 9(b) ....................................................... 27

    D.  Plaintiff Fales Has Adequately Alleged Jurisdiction And Will Submitted An Affidavit
        Pursuant To Cal. Civ. Code §1780 ............................................................................. 28

    E.  Plaintiff Fales Is Entitled To Proceed As A "Private Attorney General" Under The
        CLRA ............................................................................................................................. 28\\

CONCLUSION............................................................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

3Com Corp. v. Elec. Recovery Specialists, Inc.,
    104 F. Supp. 2d 932 (N.D. Ill. June 9, 2000).................................................................. 13

Aladdin Elec. Assocs. v. Town of Old Orchard Beach,
    645 A.2d 1142 (Me. 1994)................................................................................................ 9

Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.,
    2004 U.S. Dist. LEXIS 28007 (N.D. Ill. Dec. 28, 2004)(JBM)....................................... 12

Barrett v. Brian Beamis Autoworld,
    2005 U.S. Dist. LEXIS 39499 (N.D. Ill. 2005) (DHC) ..................................................... 22

Benefit Trust Life Ins. Co. v. Union Nat'l Bank,
    776 F.2d 1174 (3d Cir. 1985)........................................................................................... 9

Bescos v. Bank of Am.,
    105 Cal. App. 4th 378 (Cal. Ct. App. 2003) ..................................................................... 27

Blakemore v. Super. Ct of Los Angeles Cty.,
    129 Cal.App.4th 36 (Cal. Ct. App. 2005) ........................................................................ 27

Board of Highway Comm'rs v. City of Bloomington,
    253 Ill. 164 (1911) ........................................................................................................... 8

Cambridge Eng'g, Inc. v. Robertshaw Controls Co.,
    966 F. Supp. 1509 (E.D. Mo. 1997).................................................................................. 12

Chamberlan v. Ford Motor Co.,
    369 F. Supp. 2d 1138 (N.D. Ca. 2005) ...................................................................... 25, 26

City of Witchita Kansas v. U.S. Gypsum Co.,
    828 F. Supp. 851 (D. Kan. 1993)...................................................................................... 15

Coast Plaza Doctors Hospital v. Blue Cross of Cal.,
    83 Cal. App. 4th 677 (Cal. Ct. App. 2000) ...................................................................... 29

Connick v. Suzuki Motor Co., Ltd.,
    675 N.E.2d 584 (Ill. 1996).................................................................................... 20, 21, 23

Cooper v. Durham Sch. Servs.,
    2003 U.S. Dist. LEXIS 25005 (N.D. Ill. Sept. 18, 2003) ................................................. 12

Cox v. Microsoft Corp.,
    778 N.Y.S.2d 147 (1st Dept. 2004) ............................................................... 10

Cox v. Microsoft Corp.,
    No. 105193/00, 2005 N.Y. Slip Op. (N.Y. Sup. Ct. July 2, 2003) ................................... 10

DiLeo v. Ernst & Young,
    901 F.2d 624 (7th Cir. 1990) .................................................................... 24

Forrest Assocs. v. Passamaquoddy Tribe,
    760 A.2d 1041 (Me. 2000)......................................................................... 7

Grupo Sistemas Integrales De Telecomunicacion S.A. De C.V. v. AT&T Communications Inc.,
    Civ.A.No. 92 civ. 7862 (KMW), 1996 U.S. Dist. LEXIS 2927
    (S.D.N.Y. Mar. 11, 1996) ....................................................................... 12

Hirsch v. Bank of Am.,
    107 Cal. App. 4th 708 (Cal. Ct. App. 2003) ...................................................... 8

HPI Health Care Servs., Inc. v. Mt. Vernon Hospital, Inc.,
    545 N.E.2d 672 (Ill. 1989) ...................................................................... 8

In re Bridgestone/Firestone Inc. v. Wilderness Tires Prod. Liab. Litig.,
    155 F. Supp. 2d 1069 (S.D. Ind. 2001) ...................................................... 11, 15

In re Gen. Motors Corp. Piston Slap Prod. Liab. Litig.
    2005 U.S. Dist. LEXIS 23259 (W.D. Ok. Aug. 8, 2005) ............................................ 18

In re K-Dur Antitrust Litig.,
    338 F. Supp. 2d 517 (D.N.J. 2004) ............................................................... 9

In re Vitamins Antitrust Litig.,
    Misc. No. 99-197, MDL No. 1285, 2001 U.S. Dist. LEXIS 9585
    (D.D.C. April 11, 2001) ........................................................................ 10

Johnson v. Rivera,
    272 F. 3d 519 (7th Cir. 2001).................................................................... 6

King v. Lang,
    42 P.3d 698 (Idaho 2002).........................................................................7

Lombard Corp. v. Quality Aluminium Prod. Co.,
    261 F.2d 336 (6th Cir. 1958) ................................................................... 12

Mfrs. Hanover Trust Co. v. Chemical Bank,
    559 N.Y.S.2d 704 (1st Dept. 1990) .............................................................. 10

Martinez v. Hooper,
    148 F. 3d 856 (7th Cir. 1998) ........................................................ 7

Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.,
    907 F.2d 732 (7th Cir. 1990) ........................................................ 7

Mirkin v. Wasserman,
    858 P.2d 568 (Cal. 1993) .......................................................... 26

Oliveira v. Amoco Oil Co.,
    201 Ill. 2d 134 (2002) ..................................................... 19, 21, 23

Outboard Marine Corp. v. Super. Ct.,
    52 Cal. App. 3d 30 (Cal. Ct. App. 1975) ...................................... 27

Overlandbond & Inv. Corp. v. Howard,
    9 Ill. App. 3d 348 (1st Dist. 1972) .............................................. 18

Pastoria v. Nationwide Insur.,
    112 Cal. App.4th 1490 (Cal. Ct. App. 2003) ................................ 27

Perona v. Volkswagen of Am., Inc.,
    292 Ill. App. 3d 59 (1997) .......................................................... 22

Robinson v. Toyota Motor Credit Corp.,
    775 N.E.2d 951 (Ill. 2002) ......................................................... 19

Ryan v. Wersi Electrc GmBH & Co.,
    59 F.3d 52 (7th Cir. 1995) .......................................................... 23

Sharrow Group v. Zausa Dev. Corp.,
    2004 U.S. Dist. LEXIS 24497 (N.D. Ill. Dec. 3, 2004) .................. 12

Skelton v. Gen. Motors Corp.,
    500 F. Supp. 1181 (N.D. Ill. 1980) ................................... 16, 18, 19

Solarz v. Daimler Chrysler Corp.,
    2002 Phila. Ct. Comm. Pls. LEXIS 34 (2002) ............................. 15

Strzakowlski v. Gen. Motors Corp.,
    2005 U.S. Dist. LEXIS 18111 (D. N.J. Aug. 16, 2005)................ 14, 15, 24, 28

Sullivan v. Young Bros. Co. Inc.,
    893 F. Supp. 1148 (D. Me. 1995) ............................................... 14

Sulzer v. Diedrich,
    654 N.W. 67 (Wis. Ct. App. 2002) ................................................................. 7

Walco Power Serv. v. Maplehurst Farm, Inc.,
    1987 R.I. Super. LEXIS 36 (R.I. Super. Ct. 1987) ........................................... 9

Statutes

California's Consumer Legal Remedies Act

    Cal. Civ. Code § 1750 ........................................................................... 25
    Cal. Civ. Code § 1770(a)(5) and (7) ....................................................... 25
    Cal. Civ. Code §1780 ....................................................................... 25, 28

Federal Rules of Civil Procedure

    Fed. R. Civ. P. 12(b)(6) ........................................................................... 6
    Fed. R. Civ. Proc 8(e)(2) ......................................................................... 12
    Fed. R. Civ. Proc. 8(a) ............................................................................ 17
    Fed. R. Civ. Proc. 9(b) ....................................................................... 24, 25

## PRELIMINARY STATEMENT

Plaintiffs seek to hold General Motors Corp., ("GM" or "Defendant") liable for its defective design of the 1999 through 2002 model year C/K series GMT800 platform vehicles equipped with an antilock brake system ("ABS") (collectively, the "Vehicles").

The Vehicles are defectively designed because they are all equipped with a Wheel Hub Bearing Assembly and ABS system that permit corrosion to migrate and be introduced into the Wheel Hub Bearing Assembly via the ABS Wheel Speed Sensor hole, thereby contaminating the hub assembly, fouling the all-important "air gap", and corroding the ABS Wheel Speed Sensors. This condition, in turn, causes the unwanted cycling of the ABS at low speeds, resulting in longer than anticipated stopping distances and countless vehicular accidents. Cplt. ¶ 2.[1]

Plaintiffs have asserted the following causes of action on behalf of themselves and class members: (i) unjust enrichment; (ii) breach of implied warranty of merchantability; (iii) violation of California's Consumer Legal Remedies Act (the "CLRA"); and (iv) violations of Illinois' Consumer Fraud And Deceptive Practices Act (the "ICFA"). Despite the strength of Plaintiffs' claims, which is demonstrated in part by the plethora of engineering schematics, charts, and photographs annexed to the Consolidated Amended Class Action Complaint (the "Complaint"), GM seeks dismissal of all causes of action asserted by Plaintiffs. All of Defendant's arguments fail for the reasons stated herein, and Defendant's motion to dismiss must therefore be denied in its entirety.

## STATEMENT OF FACTS

### A Primer On Abs Brakes

In theory, antilock brakes are designed to help drivers avoid crashes. When a driver applies a great deal of force to the brake pedal of a vehicle that is not equipped with ABS brakes while that vehicle is being operated, the wheels may lock and the vehicle may skid. Wheel lockup can result in longer stopping distances, loss of steering control and, when road friction is uneven, loss of stability if the vehicle begins to spin. ABS brakes are theoretically designed to reduce these problems on wet and slippery roads. Cplt. ¶ 20.

The principle behind ABS brakes is that a skidding wheel provides less stopping force and control than a wheel that is rotating. Antilock brakes are theoretically supposed to prevent

---

[1] All references to the Complaint appear in the form "Cplt. at ¶ __."

wheels from skidding by monitoring the speed of each wheel and automatically pulsing the brake pressure on any wheels where skidding is detected by the Wheel Speed Sensor. Once a Wheel Speed Sensor transmits data to the ABS Controller indicating that a wheel lock up is imminent, the ABS Controller first acts to decrease the brake pressure by closing the ABS Valve in the affected brake line in order to prevent any additional brake fluid from flowing from the master brake cylinder through that brake line, the ABS Controller also causes any excess brake fluid to be "dumped" into an overflow reservoir – both actions serve to decrease brake pressure on the affected wheel in order to avoid wheel lock up. Conversely, once the ABS Controller senses that the brake line pressure has dropped to a level that requires an increase in brake line pressure in order to achieve the desired braking effect, the ABS Controller directs the ABS Valve in the brake line to open and the ABS Pump to pump additional brake fluid into that brake line in order to increase brake pressure. The rapid opening and closing of the ABS Valves and pumping and dumping of brake fluid resulting in a rapid "pulsing" of the vehicle's brakes in order to apply the brake pressure required to stop the vehicle without the vehicle experiencing wheel lock up. This pulsing can often be felt in the brake pedal. Cplt. ¶ 22.

## The Defect

The design of the Wheel Hub Bearing Assembly and ABS System used in manufacturing the Vehicles is defective because is allows corrosion to migrate, and be introduced into the Wheel Hub Bearing Assembly via the ABS Wheel Speed Sensor hole, thereby contaminating the hub assembly, fouling the all-important "air gap", and corroding the ABS Wheel Speed Sensors themselves. See Cplt. Exhibits 5-13 (depicting corrosion-contaminated Wheel Hub Bearing/Wheel Speed Sensor Assemblies); Cplt. Exhibits 14-18 (depicting corrosion-contaminated Wheel Speed Sensors); Cplt Exhibits 19-20 (depicting corrosion-contaminated Wheel Speed Sensor mounting surfaces). Cplt. ¶ 23.

Corrosion of the ABS Wheel Speed Sensor mounting surface is the most common cause of fouling in the "air gap" between the ABS Tone Ring and the ABS Wheel Speed Sensor. The "air gap" becomes contaminated when corrosion pushes the ABS Wheel Speed Sensor away from the ABS Tone Ring teeth, causing an increase in the "air gap." The larger the air gap, the weaker the signal that is transmitted by the ABS Wheel Speed Sensor to the ABS Controller. Cplt. ¶ 24.

According to GM's publications, the ABS Wheel Speed Sensors used in the Vehicles are designed to transmit an electronic pulse that measures between 300-350 millivolts. As corrosion is introduced into the "air gap," thereby causing the ABS Wheel Speed Sensor to be pushed only a few millimeters farther away from the ABS Tone Ring than it was designed to be positioned, the strength of the electronic pulse transmitted across the "air gap" diminishes below the specified 300-350 millivolts. Cplt. ¶ 25.

When the "air gap" is fouled, the ABS Wheel Speed Sensor can report to the ABS Controller a higher or lower wheel speed than the speed at which the wheel is actually traveling. A fouled "air gap" can also cause an ABS Wheel Speed Sensor to transmit a garbled, and therefore useless, signal to the ABS Controller. Either of these situations can confuse the ABS Controller into working when it should not, or failing to work when it should, resulting in collisions. See, e.g., Cplt. Exhibits 21-24 (depicting collisions and property damage that resulted from the unwanted activation of the ABS in both Vehicles at low speeds, which was caused by corrosion contaminating the ABS Wheel Speed Sensors in both Vehicles. Cplt. Exhibits 23 and 24 depict the crash that occurred in Plaintiff Renee Fales' Vehicle when she experienced an unwanted activation of the ABS in her Vehicle while pulling into the parking space depicted in the photos). Cplt. ¶ 26.

For example, coming to a low-speed stop, certain of the wheel speed sensors may be reading 50 RPM, while a contaminated sensor reports 500 RPM. In such a situation, the ABS Controller compares signals that it is receiving from all of the ABS Wheel Speed Sensors and incorrectly sees this situation as a vehicle out of control, with one wheel turning at 500 RPM and three wheels skidding at 50 RPM. Because the purpose of the ABS system is to prevent wheel lockup and skidding, the ABS Controller kicks in aggressively to pulse the brakes. However, when incorrect ABS Wheel Speed Sensor data transmissions cause the ABS Controller to trigger and rapidly pulse the brakes at speeds that are too low, it significantly and unsafely lengthens what should be a simple low-speed stop. Cplt. ¶ 27.

**GM Has Known Of The Existence Of The Design Defect Since At Least 1999**

Complaints that drivers of GM's GMT 800 Platform Vehicles were experiencing unwanted activation of the antilock braking systems while operating these Vehicles at low speeds began to surface almost immediately after GM first sold these Vehicles. Cplt. ¶ 28-29. Transport Canada (the Canadian counter-part to the United States' Department of Transportation's National Highway Traffic Safety Administration or "NHTSA") directly informed GM of the defect in the Vehicles as early as 1999, thereby providing GM with actual knowledge of the existence of the design defect as early as 1999. Cplt. ¶ 29-30.

Having received a steady stream of driver complaints of unwanted activation of the antilock braking system in GM's GMT 800 platform vehicles at low speeds throughout the 1999 through 2002 time period, Transport Canada initiated a "Level III Defect Investigation" into the cause of "unwanted cycling of the ABS at low speed [that] results in a longer than anticipated stopping distance" in 2002. Cplt. ¶ 31-44.

On June 17, 2002 a Transport Canada Defect Investigator Peter Male authored a Memorandum to his supervisors detailing the status of Transport Canada's investigative efforts on Investigation File No. ASF 3280-02-4-62, which involved an inquiry into the cause of "unwanted ABS activation at low speed on 1995-2002, C, K, S, T, M & L model vehicles." Cplt. ¶ 33-41. In the June 17, 2002 memorandum, Defect Investigator Male informed his supervisors that Transport Canada had identified the "Reason for failure" as "Corrosion at the sensor/hub interface misaligns the sensor and gives an inaccurate wheel speed causing it to 'fall out.'" This same memo further stated that, "the suspected cause is corrosion at a sensor that misaligns it from the tone ring resulting in an unwanted ABS activation. This produces a longer stopping distance than the driver expects." The Transport Canada Memorandum further warned, "**Potentially the problem could affect every vehicle where corrosion is a factor**." (Emphasis added). The same memorandum stated in relevant part: **GM inspected RP386 after the vehicle was repaired. They concluded the brake failure was due to a corroded sensor that misaligns it with the tone ring. They feel it is not a significant issue . . . GM is not planning any action**. Furthermore, the memorandum stated "**The potential for a personal**

injury is high considering these events happen in low speed parking lot conditions. . . ."
(Emphasis added).  Cplt. ¶ 34-37.


## GM Failed To Disclosed The Existence Of The Defect Until 2005

Nearly three years after defect investigator Male authored his memorandum and after years of denying the existence of the defect, GM was forced to issue a Notice of Product Safety Recall in January 2005 which stated in relevant part:

CONDITION:

**General Motors has decided that a defect which relates to motor vehicle safety exists in certain 1999-2002 Chevrolet Silverado, 2000-2002 Chevrolet Tahoe, Suburban, 2002 Chevrolet Avalanche, 1999-2002 GMC Sierra, 2000-2002 GMC Yukon, Yukon XL vehicles** located in Ontario, Quebec, Newfoundland, New Brunswick, Nova Scotia, and Prince Edward Island.  These vehicles may have a condition permitting corrosion to occur between the front hub/bearing assembly and the wheel speed sensor.  **If the brakes are applied while the vehicle is traveling at a speed of greater than 6 km/h (3.7 mph) but less than 16 km/h (10 mph), the corrosion may cause an unwanted anti-lock brake system (ABS) activation.  If this condition occurred where stopping distance is limited, a crash could occur.**

Cplt. ¶ 65.  (Emphasis added).


On August 30, 2005, GM announced that it was recalling defective Vehicles located in only 14 of the 50 United States.  Cplt. ¶ 81.  On December 23, 2005, after Plaintiffs had filed their Amended Complaint, GM further announced that it was recalling the defective Vehicles in an additional six states and the District of Columbia, including the states of Delaware, Iowa, Maryland, Minnesota, Missouri and Wisconsin.

In announcing the partial recall, GM stated those Vehicles that were included in the universe of recalled Vehicles would be subjected to a one-time service procedure that involved disassembling and cleaning the Wheel Hub Assembly and Wheel Speed Sensors, and a one-time application of Zinc-X corrosion inhibitor.  Cplt. ¶ 92.

**GM's Proposed Remedy Does Not Cure The Defectively Designed Vehicles**

GM's actions do not provide Plaintiffs and the class members they seek to represent with adequate remedies for two reasons. First, GM's recall is incomplete. While GM has agreed to recall the defective Vehicles in 20 states and the District of Columbia, GM has refused to recall any of the defective Vehicles located in the states of: Alaska, Arkansas, California, Colorado, Georgia, Hawaii, Louisiana, Kansas, Kentucky, Missouri, Montana, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, South Carolina, South Dakota, Texas, Utah, Virginia, Washington, and Wyoming despite GM's knowledge that these Vehicles suffer from the same design defect inherent in the Vehicles that GM has recalled. Cplt. 83-91.

Second, even in the limited number of states where GM has agreed to recall the admittedly defective Vehicles, GM's recall procedure will not cure the defect in the Vehicles for a simple reason. GM's recall procedure involves a one-time application of Zinc-X Corrosion Inhibitor to the affected areas in order to inhibit the development of rust and corrosion. However, according to the Product Data Sheet prepared by LPS Laboratories, the manufacturer of Zinc-X, Zinc-X "prevents rust and corrosion on all metals" but only provides "**up to two years protection.**" As Transport Canada's February 23, 2004 letter to GM correctly observed, "it appears reasonable to expect that corrosion will re-occur." Therefore, because: (i) corrosion on the ABS Wheel Speed Sensors is expected to re-occur; (ii) GM's recall procedure only call for a one time cleaning and application of Zinc-X; (iii) all of the defective Vehicles located in the United States (including those located in states where GM has agreed to conduct a recall) have an expected useful life that is greater than two years from the time when these Vehicles will be treated with Zinc-X; and (iv) because GM has already learned that corrosion of the ABS Wheel Speed Sensors can develop in a period as short as two months even where no corrosion existed previously, GM's proposed remedy will not cure the defect in the Vehicles. Cplt. ¶¶ 92-95.

## ARGUMENT

### I.    Standard Of Review

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court merely looks at the sufficiency of the complaint, accepting as true all well pleaded allegations and drawing all inferences in favor of the plaintiff. See Johnson v. Rivera, 272 F. 3d 519, 520 (7th

Cir. 2001). The Court "must look to see whether there is any possible interpretation of the complaint under which it can state a claim." Martinez v. Hooper, 148 F. 3d 856, 585 (7th Cir. 1998). As demonstrated herein, Plaintiffs' Complaint states all allegations sufficient to withstand a motion to dismiss.

**II.     Plaintiffs Have Stated A Cause For Unjust Enrichment**

In order to state a cause of action for unjust enrichment, Plaintiffs must allege "receipt of a benefit and unjust retention of the benefit at the expense of another." See, e.g. Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp., 907 F.2d 732, 737 (7th Cir. 1990)(applying Illinois law); Forrest Assocs. v. Passamaquoddy Tribe, 760 A.2d 1041, 1045 (Me. 2000); Dellagrotta v. Dellagrotta, 873 A.2d 101 (R.I. 2005). Here, Plaintiffs have satisfied these pleading requirements.

In particular, in pleading Counts I, II and III, Plaintiffs have alleged that: (i) "during the Class Period, Plaintiff and members of the Class conferred upon GM, without knowledge of the design defect, payment for their Vehicles, benefits which were non-gratuitous"; (ii) "GM accepted or retained the non-gratuitous benefits conferred by Plaintiff and members if the Class despite GM's knowledge of the design defect in the Vehicles. Retaining the non-gratuitous benefits conferred upon GM by Plaintiff and the Class under these circumstances made GM's retention of the non-gratuitous benefits unjust and inequitable"; and (iii) "because GM's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, GM must pay restitution in a manner established by the Court." Cplt. ¶¶ 109-111, 118-121; 128-130. These allegations state a cause of action for unjust enrichment. See Midcoast., 907 F.2d 732, 737 (7th Cir. 1990).

In light of these well-pled allegations, GM seeks to convince the Court that Plaintiffs' cause of action for unjust enrichment must be dismissed for three reasons. First, GM contends that Plaintiffs have failed to allege that they directly conferred a benefit upon GM. Contrary to GM's assertions, however, none of the states included in Counts I, II or III, which plead Plaintiffs' Unjust Enrichment Claims, require the direct conferral of a benefit upon a defendant.

Second, GM argues that its limited recall of the Vehicles in a few states across the United States renders Plaintiffs' cause of action for unjust enrichment moot. Plaintiffs have alleged, however, that this limited recall only involves 20 states and the District of Columbia and is therefore incomplete and inadequate and therefore, ineffectual.

Finally, GM contends that its limited express warranty precludes Plaintiffs' unjust enrichment claim. The language of GM's limited warranty, however, makes clear that GM's limited warranty does not apply to design defects. Because of this, GM's limited warranty does not provide Plaintiffs or Class members with a contractual remedy, does not cover the subject matter of this litigation, and therefore cannot be utilized to prevent Plaintiffs and class members from pursuing their unjust enrichment claims.

### A. Plaintiffs Have Stated A Claim For Unjust Enrichment Because There Is No Requirement That Plaintiffs Allege The Conferral Of A Direct Benefit Upon GM

GM's contention that the laws of unjust enrichment for the States of California, Illinois, Maine, and Rhode Island require a direct benefit is wholly without merit, and directly contradicted by case law from each of these States.

### i. California

California courts have unambiguously decided this issue. In Hirsch v. Bank of America, 107 Cal. App. 4th 708 (Cal. Ct. App. 2003), plaintiffs alleged that defendant banks charged excessive fees to title companies and that the title companies then passed these fees onto plaintiffs. The court noted that "[a] person is enriched if he or she receives a benefit at another's expense" and "[t]o confer a benefit, **it is not essential that money be paid directly to the recipient by the party seeking restitution.**" Id. at 722 (emphasis in original). Similarly, In re Cardizem CD Antitrust Litig., the District Court explicitly stated "**there is no additional requirement that a benefit flow solely from Plaintiffs to Defendants.**" 105 F.Supp.2d 618, 671 (E.D. Mich. 2000)(analyzing the laws of California and Illinois) (emphasis added).

### ii. Illinois

The law of Illinois also clearly recognizes that recovery under an unjust enrichment theory is available where – as here -- a benefit has been unjustly indirectly conferred on defendant. In HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., 545 N.E.2d 672, 679 (Ill. 1989), the plaintiff sought "recovery of a benefit that was transferred to the defendant by a third party. In such situations, courts have found that retention of the benefit would be unjust where...the plaintiff...had a better claim to the benefit than the defendant (citing Board of Highway Commissioners v. City of Bloomington, 253 Ill. 164, 176-177 (1911)). Similarly, in Board of Highway Commissioners, the court stated that "no privity is necessary" and that "[t]he

action is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and which *ex cequo et bono* belongs to another (citation)." Id. at 174. See also In re Cardizem CD Antitrust Litig., 105 F.Supp.2d 618, 671 (holding that under Illinois law, a direct benefit is not required to state a claim for unjust enrichment).

### iii. Maine

Similarly, Maine law governing a cause of action for unjust enrichment does not require any direct dealing between the parties. In Aladdin Elec. Assocs. v. Town of Old Orchard Beach, 645 A.2d 1142 (Me. 1994), plaintiff was hired by a third party to do electrical work on a ballpark owned by the Town of Old Orchard Beach. Although plaintiff and defendant had no direct dealings, the court noted that the defendant unjustly benefited at plaintiff's expense. The court held that "[l]ack of privity of contract...do[es] not bar an action for unjust enrichment" and "the Town's retention of benefits in this situation is unjust." Id. at 1144 (emphasis added).

### iv. Rhode Island

Likewise, Rhode Island law governing unjust enrichment has no requirement of direct dealing. In Walco Power Serv. v. Maplehurst Farm, Inc., 1987 R.I. Super. LEXIS 36 (R.I. Super. Ct. 1987), plaintiff subcontractor was not paid by the general contractor and brought an action against the property owner for unjust enrichment. Although there were no direct dealings between plaintiff and defendant, the court held that "it is well recognized that the absence of a contractual relationship is not a bar to an action for unjust enrichment." Id. at *4. Furthermore, the court noted that "indeed a benefit was conferred upon the defendant by the plaintiff...." Id. at *5. However, the court held that it was not inequitable for defendant to retain the benefit because defendant had already paid the general contractor for it. Id.

Finally, in In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544 (D.N.J. 2004), where the plaintiffs asserted unjust enrichment claims under the laws of all fifty states and the District of Columbia, the court held that "Defendants'...argument that an unjust enrichment claim requires an allegation that Plaintiffs dealt directly with Defendants[] is...without merit." The court noted "the essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties" (quoting Benefit Trust Life Ins. Co. v. Union Nat'l Bank, 776 F.2d 1174, 1177 (3d Cir. 1985)) (emphasis added).

GM's only authority for its argument that a direct benefit is required is from the law of inapplicable jurisdictions. For instance, in <u>In re Vitamins Antitrust Litig.</u>, Misc. No. 99-197, MDL No. 1285, 2001 U.S. Dist. LEXIS 9585 (D.D.C. April 11, 2001), the court held that a direct benefit was required for an unjust enrichment claim; however, it only addressed the claim under the law of Tennessee. <u>Id.</u> at *41. Plaintiffs here, however, are not asserting a claim for unjust enrichment under the law of Tennessee.

Additionally, GM's reliance on <u>Cox v. Microsoft Corp.</u>, No. 105193/00, 2005 N.Y. Slip Op. (N.Y. Sup. Ct. July 2, 2003) is particularly noteworthy because the current state of affairs in the <u>Cox v. Microsoft</u> proceedings unambiguously refutes GM's argument. In <u>Cox v. Microsoft Corp.</u>, 778 N.Y.S.2d 147 (1st Dept. 2004), the appellate court held that "the motion court (the Court cited by GM) **erroneously dismissed plaintiffs' cause of action for unjust enrichment, holding that, as indirect purchasers of Microsoft's software products, plaintiffs only indirectly bestowed a benefit upon Microsoft.**" <u>Id.</u> at 149 (emphasis added). The motion court erred because "**[i]t does not matter whether the benefit is directly or indirectly conveyed**" (quoting <u>Manufacturers Hanover Trust Co. v. Chemical Bank</u>, 559 N.Y.S.2d 704, 708 (1st Dept. 1990). <u>Id.</u> (emphasis added). In the latest proceeding, reported at <u>Cox v. Microsoft Corp.</u>, 2005 N.Y. Misc. LEXIS 2712, (S. Ct. N.Y. 2005), the lower court acknowledged its reversal for dismissing the unjust enrichment claim, and has now granted plaintiff's motion for class certification on the unjust enrichment claim. <u>Id.</u> at *16. Accordingly, GM's reliance on the <u>Cox</u> opinion is entirely misplaced because the <u>Cox</u> opinion upon which GM relies was reversed on the very grounds for which GM has cited it.

The authority cited herein makes clear that allegations of a direct benefit are unnecessary to state a cause of action for unjust enrichment in the states identified in Counts I, II, and III.

**B.    GM's Limited Recall Does Not Render Plaintiffs' Claims
For Unjust Enrichment Moot Because Plaintiffs Have Alleged That GM's
Limited Recall Is Incomplete and Otherwise Inadequate**

Plaintiffs have alleged that GM's limited recall in a small number of cherry-picked states is inadequate for at least two reasons. First, the recall is limited to only a few states hand-selected by GM, despite the fact that GM has been warned by Transport Canada that "potentially, the problem could affect every vehicle where corrosion is a factor" (which is everywhere in the United States), and that Plaintiffs and members of the Class from states other

than those in which GM has conducted this limited recall have experienced unwanted ABS activation resulting in accidents. Cplt. at ¶¶ 34, 88-91. Second, Plaintiffs have alleged that GM's recall is inadequate because the recall procedure, applying Zinc-X (rust inhibitor) to the Vehicles only provides protection for "up to two years." Because the useful life of the Vehicles is at least 10 years, the recall procedure, and thus the recall, itself, is inadequate. Cplt. at ¶¶ 92-95.

GM, however, contends that its severely limited and inadequate recall, somehow renders Plaintiffs claims for unjust enrichment moot. This argument has been rejected in the past. GM's argument bears a striking resemblance to that of the defendant in <u>In re Bridgestone/Firestone Inc. v. Wilderness Tires Products Liability Litig.</u>, 155 F. Supp. 2d 1069 (S.D. Ind. 2001). There, defendant sought to dismiss plaintiffs' unjust enrichment claim because defendants had recalled the defective tires and thus did not retain any benefit. The court denied the motion, however, because there – as here -- plaintiffs alleged that the recall was inadequate. <u>Id.</u> at 1115.

GM does not cite any contrary authority, nor does it offer any explanation to support its factually incorrect argument that the act of conducting an extremely limited recall of these defective Vehicles somehow serves to demonstrate that GM did not unjustly retain any benefit. The inescapable fact is that: (i) GM was unjustly enriched as a result of having sold Vehicles that GM knew were defectively designed to Plaintiffs and members of the class (Cplt. ¶¶ 109-111, 118-121); and (ii) GM's limited, one-time and ineffectual recall procedures do not – and cannot – render either Plaintiffs' or class members' claims moot because as pled at ¶¶ 92-95 of the Complaint, GM has not recalled the vast majority of these defective Vehicles, and GM's one-time cleaning and Zinc-X application recall procedure is inadequate because corrosion can and has re-occurred, and this procedure therefore does not cure the defect in these Vehicles.

## C.      A Limited Warranty Between GM and Plaintiffs Does Not Preclude Plaintiffs From Pleading An Unjust Enrichment Claim

GM's argument that Plaintiffs' unjust enrichment claims must be dismissed due to the existence of an express warranty is similarly without merit for one very simple reason. As the language of GM's express warranty itself makes clear, the warranty does not cover "design defects" – and is therefore simply not applicable to Plaintiffs and class members as a means of remedying the design defect that forms the basis of this action.

GM limited express warranty states that the "warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period." See GM's New Vehicle Limited Warranty at 7 annexed hereto as Exhibit A. By these terms, the Limited Warranty is only applicable to claims based on defects in material or workmanship. Plaintiffs' claims for unjust enrichment (and for all of the other causes of action, as well), are based on allegations of defects in design, not defects in materials or workmanship. Cplt. at ¶¶ 103, 104. Accordingly, the Limited Warranty does not govern Plaintiffs' claims of design defect.

A defect in material is a defect in quality, and a defect in workmanship is a defect in the way some part of the machine is constructed. Design, on the contrary involves the overall plan of construction and operation." Lombard Corp. v. Quality Aluminium Prod. Co., 261 F.2d 336 (6th Cir. 1958).

In Grupo Sistemas Integrales De Telecomunicacion S.A. De C.V. v. AT&T Communications Inc., Civ.A.No. 92 civ. 7862 (KMW), 1996 U.S. Dist. LEXIS 2927 (S.D.N.Y. Mar. 11, 1996), the Southern District of New York encountered a similar situation. In Grupo, the plaintiff received an express warranty limited to the material and workmanship of defective parts. The Grupo court recognized that this limited warranty was inapplicable to plaintiff's claim of a design defect. See Grupo, 1996 U.S. Dist. LEXIS 2927, at *20. See also Cambridge Eng'g, Inc. v. Robertshaw Controls Co., 966 F. Supp. 1509, 1524 (E.D. Mo. 1997).[2]

---

[2] Furthermore, even if GM's limited warranty could arguably cover design defects (which it does not), the existence of the contract does not preclude Plaintiffs from pleading an unjust enrichment claim, in the alternative. Pursuant to Fed. R. Civ. Proc 8(e)(2), "a party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds."

Noteworthy are decisions of this Court on this topic. This Court has held, that plaintiffs are entitled to plead causes of action for both unjust enrichment and breach of contract simultaneously, so long as the allegations of unjust enrichment are based in tort and not on the breach of contract, itself. See Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc., 2004 U.S. Dist. LEXIS 28007, at *50 (N.D. Ill. Dec. 28, 2004)(JBM) ("plaintiff may allege unjust enrichment as well as the existence of a governing contract when the claim is based on defendant's tortious conduct."); Sharrow Group v. Zausa Dev. Corp., 2004 U.S. Dist. LEXIS 24497, at *9 (N.D. Ill. Dec. 3, 2004) (JBM) ("while plaintiff may plead breach of contract in one count and unjust enrichment and promissory estoppel in others, it may not include allegations of an express contract, which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel."); Cooper v. Durham Sch. Servs., 2003 U.S. Dist. LEXIS 25005, *20 (N.D. Ill. Sept. 18, 2003) (JBM) ("the Federal Rules of Civil Procedure allow parties to plead in the alternative. Thus, they may allege both breach of contract and unjust enrichment, despite any

Accordingly, Plaintiffs respectfully request that this Court deny GM's Motion To Dismiss.

### III. Plaintiffs Have Adequately Pled That GM Breached The Implied Warranty Of Merchantability

In the face of hundreds of complaints from consumers across the United States and Canada recounting incidents of failed ABS, an internal investigation conducted by GM's own engineers, an investigation conducted by Transport Canada, and a 2005 admission of the defect by GM itself, GM continues to sell the Vehicles without modification. These damning allegations demonstrate that GM's continued sale of the Vehicles amounts to a breach of the implied warranty of merchantability.

Despite the strength of these allegations, GM contends that Plaintiffs have failed to state a claim for breach of implied warranty for two reasons. First, GM argues that Plaintiffs have failed to provide it with notice of the defect inherent in the Vehicles. GM's argument fails because: i) Plaintiff Soohoo has provided GM with notice of the defect; and ii) Plaintiffs' Complaint serves as adequate notice of the defect.

Second, GM contends that Plaintiffs have not alleged that the Vehicles are unmerchantable, as required, in order to state a claim for breach of the implied warranty of merchantability. This argument is blatantly contradicted by the plain wording of the Complaint, as well as by the numerous attached photographs that demonstrate the Vehicles' lack of merchantability, as well as lack of safety.

Accordingly, Plaintiffs respectfully request that this Court deny GM's motion to dismiss Plaintiffs' claims for breach of the implied warranty of merchantability.

---

inconsistency between them. Nonetheless, a party may not include specific references to a governing contract in a count for unjust enrichment."); 3Com Corp. v. Electronic Recovery Specialists, Inc., 104 F. Supp. 2d 932, 940-941 (N.D. Ill. June 9, 2000) (JBM) ("plaintiff may allege the existence of a governing contract in count I and alternatively seek restitution in count VII without defaulting the latter claim on a motion to dismiss. Courts in this circuit repeatedly have held that such alternative pleading is sufficient to withstand a challenge on the pleadings.") Here, Plaintiffs' allegations of unjust enrichment are based on fraud, a tort, not breach of contract.

**A.    Plaintiff Soohoo Has Provided GM With Notice Of The Defective ABS**

According to UCC 2-607, a buyer must notify a seller of a breach of warranty "within a reasonable time after he discovers or should have discovered any breach." GM contends that Plaintiffs have failed to comply with 2-607. Plaintiffs, however, have given GM notice of the defect in the Vehicles. Norman Soohoo, a purchaser of a Vehicle and proposed intervenor, [3] provided an authorized GM dealer with notice of the defect on in October, 2005. See Declaration of Norman Soohoo annexed hereto as Exhibit B ("Soohoo Declaration") at ¶ 6. Additionally, in October2005 and January 2006, Mr. Soohoo provided GM, itself, with notice of the defect inherent in his Vehicle. See Soohoo Declaration at ¶ 9. Accordingly, GM's argument that Plaintiffs have failed to provide it with notice of the defect fails.

**B.    Plaintiffs' Complaint Serves As Adequate Notice Of The Defect**

Plaintiff Bisson, like Soohoo, asserts a claim for breach of implied warranty of merchantability. Plaintiff Bisson is a resident of Maine, and while the law of Maine would govern Bisson's claims, no Maine court has decided the issue of whether the filing of a complaint is sufficient to place the manufacturer on notice of a defect in an entire line of products.[4]

In Strzakowlski v. General Motors Corp., 2005 U.S. Dist. LEXIS 18111 (D. N.J. Aug. 16, 2005), which was decided less than six months ago, a district court encountered the very same question when confronted with a similar set of facts. In Strzakowlski, plaintiffs alleged that GM breached its implied warranty of merchantability by selling vehicles that contained a defective manifold, which caused engine coolant leakage. GM maintained, as it does here, that plaintiffs failed to state a claim for breach of the implied warranty of merchantability because plaintiffs failed to notify their dealers, as well as GM, about the defect, as required by UCC 2-607. The Strzakowlski court flat out rejected GM's arguments reasoning that the filing of the complaint, itself, served as adequate notice of the defect in the vehicles. See Strzakowlski, 2005

---

[3]    For the Court's convenience, a copy of Mr. Soohoo's Motion To Intervene dated February 8, 2006 is annexed hereto as Exhibit C.

[4]    Sullivan v. Young Bros. Co. Inc., 893 F. Supp. 1148 (D. Me. 1995), the only Maine case to which GM cites, is not to the contrary. The District Court in Sullivan held that notice given to a retailer was sufficient to place the manufacturer on notice of a defect in a product. The Sullivan court did not address the issue of whether the filing of a complaint constitutes sufficient notice under 2-607 as against a manufacturer.

U.S. Dist. LEXIS 18111, *11-*15.[5]  See also In re Bridgestone/Firestone Inc. ATX and ATX II Wilderness Tires Products Liability Litig., 155 F. Supp. 2d 1069, 1109-1110 (S.D. Ind. 2001)(holding that, inter alia, because nothing in 2-607 requires that notice be given prior to suit, the filing of a complaint against a manufacturer is sufficient notice); Solarz v. Daimler Chrysler Corp., 2002 Phila. Ct. Comm. Pls. LEXIS 34 (2002).

Both the Strzakowlski and Bridgestone courts explained that there are several purposes for the notice requirement of 2-607, including: i) protection against the filing of stale claims; ii) providing the opportunity to cure a defect; and iii) opening the door for settlement, none of which would be thwarted by permitting notice by suit.  See Strzakowlski at *13; Bridgestone at 1109.

Significantly, the Bridgestone court noted that in cases, such as this one, where plaintiffs have pled that defendants **"had ample notice of the defect in the products well before the lawsuit was filed, and indeed, allegedly well before Plaintiffs themselves did, and chose not to remedy those defects, no purpose would be served by requiring pre-litigation notice."** Bridgestone at 1109-1110.  (Emphasis added).  See also City of Witchita Kansas v. U.S. Gypsum Co., 828 F. Supp. 851, 857-858 (D. Kan. 1993)(finding that where none of the purposes behind 2-607 would be served by pre-litigation notice, such notice was not required).

Here, Plaintiffs have made the similar allegations regarding GM's knowledge of the defect.  Plaintiffs have alleged that GM knew about the defect in the Vehicles, and knew well before Plaintiffs even purchased their Vehicles.  Cplt. at ¶¶ 28-30. In particular, the Complaint alleges that: (i) "excerpts from complaints made to the Canadian Government during the 1999 through 2002 time frame provided clear evidence that the GMT 800 Platform Vehicles are defectively designed and that GM has known of the existence of the defect since at least January 1999 [list of complaints quoted in ¶ 28 omitted here]" (Cplt. ¶ 28); (ii) "Transport Canada provided copies of the foregoing and other complaints directly to GM as early as 1999, thereby providing GM with actual knowledge of the defect in these Vehicles as of 1999 [list of examples quoted in ¶ 29 omitted here]" (Cplt. ¶ 29); and (iii) "GM's own documents confirm that GM had actual knowledge of the defect in the Vehicles as early as 1999 . . . a January 4, 1999 GM Dealer

---

[5]     In Strzakowlski, GM argued that the filing of a complaint only serves as notice of a defect under 2-607 in cases involving personal injury and because Strzakowlski did not involve personal injury, plaintiffs' complaint could not serve as notice.  The court rejected GM's argument.  Strzakowlski, 2005 U.S. Dist. LEXIS 1118, *13.