JH

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WAYNE MUEHLBAUER, COREY      )
BISSON, RENEE FALES and      )
CHARLES HEATH, individually and )
on behalf of all others similarly situated, )
                             )
            Plaintiffs,      )
                             )
      vs.                    )      No. 05 C 2676
                             )
GENERAL MOTORS CORPORATION, )
                             )
            Defendant.       )

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this action individually and on behalf of similarly situated individuals, against defendant General Motors, and allege that defendant-designed components for braking systems of vehicles they purchased or leased were defective. They claim that defendant, having failed to disclose the defect, has been unjustly enriched, has breached implied warranties of merchantability, and has violated the consumer protection laws of California and Illinois. Defendant now moves to dismiss all counts, and also moves to strike the class allegations. For the following reasons the motion to dismiss is granted in part and denied in part, and the class allegations are stricken, but leave to amend is extended.

## BACKGROUND

Plaintiffs allege that defendant defectively designed 1999 through 2002 model year C/K series GMT800 platform vehicles equipped with antilock brake systems (ABS) (class action cplt., ¶ 1 (CAC)). Specifically, defendant's design permitted the wheel hub bearing assembly to corrode, which affected the ABS wheel speed sensors and contaminated what plaintiffs

describe as the "air gap" (¶ 2). The altered air gap transmitted incorrect signals to the ABS sensor, which ultimately led to unwanted activation of the ABS at slow speeds, such as when one pulled into a parking space (¶¶ 24-27). Plaintiffs describe the alleged defect and relevant mechanical specifications with much greater detail, but for purposes of the motion to dismiss further recitation is unnecessary.

Consumers began complaining about ABS problems soon after defendant first sold the affected vehicles (¶ 28). Transport Canada, the Canadian governmental transportation agency, received and catalogued a number of complaints, which it forwarded to defendant as early as August 1999 (¶ 29). After receiving the complaints, Transport Canada launched an investigation and ultimately concluded that the corrosion caused a misalignment of the ABS sensor and led to unwanted ABS activation (¶¶ 31, 34). Investigators brought these findings to defendant's attention (¶ 32). According to Transport Canada investigators, GM apparently did not believe the misaligned sensor to be a significant issue (¶¶ 35, 36). Transport Canada's report concluded that any vehicle prone to corrosion and sensor misalignment was also subject to unwanted ABS activation (¶ 37). Nearly two years after its initial investigation, Transport Canada again communicated to defendant its concerns regarding the corrosion of the ABS, and furnished defendant with updated consumer complaints (¶¶ 46-48, 53-54).

After defendant initially rejected Transport Canada's suggestions for a product recall, it issued a Notice of Defect and, subsequently, a safety recall in January 2005 (¶¶ 64-65). This recall was limited to six Eastern Canadian provinces, and approximately 150,000 vehicles (¶ 66). A similar recall was not contemporaneously issued for vehicles in the United States. According to plaintiffs, defendant knew that the scope of the defect exceeded the vehicles subject to the Canadian recall (¶¶ 69-72).

Six months after the Canadian recall, and several days after this action was filed, the National Highway Traffic Safety Administration (NHTSA), began investigating allegations of unwanted ABS activation (¶¶ 77-78). On August 30, 2005, defendant issued a recall covering vehicles in 14 "salt belt" states, despite the fact that it had received complaints from consumers in 31 additional states (¶¶ 81, 84). As part of the recall, defendant instructed dealers to apply Zinc-X, a rust inhibitor, to the wheel speed sensor mounting surface (¶ 92).

The four named plaintiffs are all citizens of different states. Wayne Muehlbauer is from Illinois; Corey Bisson is a citizen of Maine; Renee Fails is from California; and Charles Heath hails from Rhode Island. These plaintiffs all allege that they experienced unwanted ABS activation and increased stopping distances during low speed brake applications. Plaintiffs define the class as those "who purchased or leased, a 1999 through 2002 model year C/K series GMT 800 platform vehicle equipped with an ABS" in 14 states prior to August 30, 2005, and in 32 states and the District of Columbia at any time (¶ 96). Expressly excluded from the class are individuals who may have claims for personal injuries or consequential damages (*id*). The class is estimated to encompass "several hundreds thousand purchasers of the Vehicles at issue"(¶ 97).

In the first three counts plaintiffs present identical unjust enrichment claims, but on behalf of distinct groups of individuals in different states. Count I (¶¶ 103-111) is brought on behalf of consumers in 17 states, with Fales as the named plaintiff. Bisson and Heath are the named plaintiffs in Count II (¶¶ 112-121), which is brought on behalf of consumers in 21 states.[1] Muehlbauer brings Count III (¶¶ 122-130) individually and on behalf of similarly

---

[1] Plaintiffs acknowledge that Count II mistakenly lists four states (Florida, North Carolina, Ohio and Pennsylvania), and have offered to address this error by submitting a corrected complaint. More on this later.

situated residents of Illinois.  In all three unjust enrichment counts plaintiffs allege that
defendant knew of the defective design as early as 1999, but despite this knowledge did not
disclose the defect until August 2005.  Plaintiffs allege that defendant's retention of the sums
they paid for the vehicles is unjust.

Bisson brings Count IV (¶¶ 131-38) individually and on behalf of similarly situated
residents in 22 states, and purchasers of new vehicles in Texas.  Under the relevant state
statutes, Bisson alleges that the defective ABS made the vehicles unfit for their ordinary
purposes of use.

Fales brings Count V individually and on behalf of residents of California, and alleges
that defendant's non-disclosure of the design defect was an unfair or deceptive act in violation
of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*  Fales seeks to enjoin the
manufacture and sale of defective vehicles.  Count VI, brought by Muehlbauer individually
and on behalf of Illinois residents, alleges that defendant violated the Consumer Fraud and
Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (ICFA).  In both counts plaintiffs
allege that they would not have purchased the vehicles had defendant disclosed the defects.
Muehlbauer adds that defendant intended that he rely on the non-disclosure of the  design
defect.

Defendant moves to dismiss all counts, and begins by raising three grounds for
dismissing those presenting unjust enrichment claims.  According to defendant, those claims
are flawed because plaintiffs do not allege any direct dealings with defendant, that no benefit
was retained after the recalls, and because no unjust enrichment claim can be maintained in
light of written limited warranties.  Defendant seeks to dismiss Count IV on the grounds that
plaintiffs have not alleged, and cannot allege, that they furnished notice to defendant of the

claimed breach of implied warranty of merchantability, and because the alleged defects do not render the vehicles unmerchantable. Counts V and VI must be dismissed, defendant argues, because plaintiffs do not identify any specific misrepresentation that led to their damages. Defendant also contends that neither Count V nor Count VI satisfies the heightened pleading standards applicable to fraud-based claims. Defendant further argues that Count VI fails to state an ICFA claim due to plaintiffs' failure to allege any affirmative misrepresentations, omissions with a concomitant duty to disclose, or that defendant's allegedly wrongful conduct caused any actual damages.

Defendant also attacks plaintiffs' class allegations, arguing that they must be stricken on several grounds. Namely, the allegations include individuals who lack standing and have not suffered any injuries, and the alleged class is unmanageable.

## DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails "to state a claim upon which relief can be granted." Dismissal is improper if there is any set of facts consistent with the allegations that support the claim for relief. Lekas v. Briley, 405 F.3d 602, 606 (7th Cir. 2005); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). A motion to dismiss tests the sufficiency of the complaint, not the merits of the action. Triad Assocs. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989). All well-pleaded allegations are accepted as true, and all reasonable inferences are drawn in plaintiff's favor. McCullah v. Gadert, 344 F.3d 655, 657 (7th Cir. 2003); Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). To survive defendant's motions, plaintiffs need not show that they will ultimately prevail, but only that they are entitled to offer evidence in support of their claims. Cole v. U.S. Capital, Inc., 389 F.3d 719, 724 (7th Cir. 2004). Rule

8(a)(2) only requires that plaintiffs provide short and plain statements with no more than the bare minimum facts necessary to put defendant on notice of their claims. <u>Brown v. Budz</u>, 398 F.3d 904, 908-909 (7th Cir. 2005). However, when fraud is alleged, it must be done with particularity and plead the who, what, when, where, and how of the alleged fraud. <u>Uni\*Quality, Inc. v. Infotronx, Inc.</u>, 974 F.2d 918, 923 (7th Cir. 1992).

## Counts I-III – Unjust Enrichment

When a party has been unjustly enriched at the expense of another, the former is often required to return any benefit to the latter. Restat. 1st of Restitution, § 1. "Benefit" is construed broadly to include "any form of advantage." <i>Id.</i> at cmt. b. Equitable principles undergird unjust enrichment, and a benefit need not be returned unless its retention is unjust. For the purposes of defendant's motion to dismiss, at issue are the laws of the named plaintiffs' states – Illinois, California, Rhode Island and Maine. The elements of unjust enrichment claims are similar under these states' laws. <u>Lectrodryer v. SeoulBank</u>, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr.2d 881, 883 (Cal. App. 2 Dist. 2000) (elements of an unjust enrichment claim are "receipt of a benefit and unjust retention of the benefit at the expense of another."); <u>Maine Eye Care Assocs. P.A. v. Gorman</u>, 2006 ME 15, P26, 890 A.2d 707 (Me. 2006) ("complaining party must establish that: (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value."); <u>Firemen's Annuity & Ben. Fund v. Municipal Employees', Officers', & Officials' Annuity & Ben. Fund</u>, 219 Ill. App. 3d 707, 712, 579 N.E.2d 1003, 162 Ill. Dec. 189 (Ill. App. 1st Dist. 1991) ("To state a cause of action based on the theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's

detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience."); <u>Anthony Corrado, Inc. v. Menard & Co. Bldg. Contractors</u>, 589 A.2d 1201, 1201-02 (R.I. 1991) ("a plaintiff is required to prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof."). The differences in the standards, such as the requirement that a defendant appreciate the benefit received, are reflected in the grouping of the counts.

According to defendant, the unjust enrichment claims must be dismissed because plaintiffs do not allege that a benefit was directly conferred. The parties only had an indirect relationship, whereby plaintiffs leased or purchased their vehicles from a third party, such as a car dealership, and defendant was a remote manufacturer or seller. Defendant argues that payments made to third parties in separate transactions are not legally sufficient to support unjust enrichment claims. In response, plaintiffs argue that a direct conferral of benefits to defendant is not required. Instead, plaintiffs posit, they only need to allege that defendant has received a benefit, and the retention of that benefit was unjust.

The first element of an unjust enrichment claim is generally phrased in terms of a plaintiff conferring a benefit on a defendant, without qualification that the benefit must be directly conferred, or provision that the benefit may be indirectly conferred. *See, e.g.,* <u>Dellagrotta v. Dellagrotta</u>, 873 A.2d 101, 113 (R.I. 2005) (stating that the first prong of an unjust enrichment claim requires a plaintiff to prove "that he or she conferred a benefit upon the party from whom relief is sought."); <u>Bouchard v. Price</u>, 694 A.2d 670, 673 (R.I. 1997) (first

element of an unjust enrichment claim is "a benefit must be conferred upon the defendant by the plaintiff."); Maine Eye Care, *supra*; Forrest Assocs. v. Passamaquoddy Tribe, 2000 ME 195, 760 A.2d 1041, 1045-46 (Me. 2000) (a plaintiff must establish that he "conferred a benefit on the other party."). In Illinois, courts emphasize the defendant's retention of the benefit, rather than plaintiff's conferral. *See, e.g.*, In re Marriage of Morreale, 351 Ill.App.3d 238, 813 N.E.2d 313, 318, 286 Ill. Dec. 256, (Ill. App. 2d Dist. 2004); Kovilic v. City of Chicago, 351 Ill.App.3d 139, 813 N.E.2d 1046, 1054, 286 Ill.Dec. 353 (Ill. App. 1st Dist. 2004) (quoting HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., 131 Ill.2d 145, 160, 137 Ill. Dec. 19, 545 N.E.2d 672 (Ill. 1989)). Similarly, as the unjust enrichment standard is articulated in Lectrodryer, the defendant's retention of a benefit is the topic of primary focus. Relevant state law thus does not specifically require that plaintiffs directly confer a benefit on defendant.

In support of its position that a valid unjust enrichment claim is conditioned on a direct conferral of benefits, defendant cites In re Vitamins Antitrust Litig., 2001 WL 849928, 2001 U.S. Dist. LEXIS 9585, *40-45 (D. D.C. 2001). In that case the plaintiffs were indirect purchasers who claimed that defendant orchestrated price-fixing schemes that caused plaintiffs to pay inflated prices for vitamin supplements. The court rejected the plaintiffs' unjust enrichment claim due to the lack of direct dealings with defendants. The discussion that defendant highlights interprets and applies Tennessee law, and Counts I through III do not present any unjust enrichment claims under Tennessee law. Moreover, although the issue was not specifically addressed, the plaintiffs in In re Vitamins brought their claims under antitrust laws, which impose formidable obstacles before indirect purchasers. *See* Illinois Brick Co. v. Illinois, 431 U.S. 720, 729 (1977); Mark v. Microsoft Corp.(In re Microsoft Corp. Antitrust Litig.), 401 F. Supp. 2d 461, 464 (D. Md. 2005). In re Vitamins thus has negligible

import.[2]

Turning back to the laws of the states actually at issue, we see that an unjust enrichment claim may be premised on an indirect conferral of benefits. As noted above, Illinois courts focus on the defendant's retention of benefits. *See also* Schlosser v. Welk, 193 Ill. App. 3d 448, 450 (Ill. App. Ct. 1990). In Hirsch v. Bank of America, 107 Cal. App. 4th 708, 722, 132 Cal. Rptr. 2d 220 (Cal. App. 1st Dist. 2003), the court specifically observed that "[t]o confer a benefit, it is not essential that money be paid directly to the recipient by the party seeking restitution." Similarly, lack of privity does not bar an unjust enrichment claim under Maine law. Aladdin Elec. Assocs. v. Town of Old Orchard Beach, 645 A.2d 1142, 1144 (Me. 1994). Like the view adopted by Illinois courts, Maine courts focus on the nature of the defendant's retention of benefits. Stevens v. Marriner, Inc., 2005 WL 2722921, *4 (Me. Super. 2005) ("The most significant element of a doctrine of unjust enrichment is whether the enrichment of the defendant is unjust.").

In Walco Power Serv. v. Mapleburst Farm, Inc, 1987 WL 859455, 1987 R.I. Super. LEXIS 36 (R.I. Super. 1987), a subcontractor brought an unjust enrichment claim against a general contractor. There were no direct dealings between the parties and the court held that the absence of a contract did not bar an unjust enrichment claim. This point provides little guidance, as the absence of a contract is a given when there is an unjust enrichment claim. *Id.* at *4. However, the court did observe that the focus of an unjust enrichment inquiry is whether a defendant derives "some benefit from the plaintiff's services" and would be unjustly

---

[2] Further diminishing the weight of In re Vitamins is a recent Tennessee state court decision that presents an alternate interpretation of Tennessee law. In Freeman Indus. v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005), the court concluded that to recover under an unjust enrichment theory, the plaintiff "need not establish that the defendant received a direct benefit from the plaintiff. Rather, a plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust."

enriched if no compensation is made. *Id.* Further, by phrasing the inquiry in terms of "some benefit" derived from plaintiff, rather than "a benefit directly provided by plaintiff," we do not think that Rhode Island courts would espouse defendant's argument on this point.

Plaintiffs also cite <u>In re Cardizem CD Antitrust Litig.</u>, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000). There the plaintiffs were purchasers of prescription medicine that the defendant manufactured. The plaintiffs alleged that the defendant and the manufacturer of a generic drug, which was the equivalent of the defendant's drug, agreed to arrest the entry of the generic drug into the market. Due to that anti-competitive agreement, the plaintiffs alleged that they were forced to purchase the defendant's name brand drugs at higher prices. The court concluded that the absence of privity or a direct conferral of benefits did not doom the plaintiffs' unjust enrichment claims. In so holding, the court observed that it is the total lack of a benefit conferred, rather than the indirect conferral of a benefit that warrants dismissal. *Id.* at 671. Moreover, the <u>In re Cardizem</u> court noted that the central inquiry is whether the plaintiff's detriment is directly related to the defendant's benefit, and not whether the plaintiff directly conferred a benefit on the defendant. *Id.* Lastly, the court observed that the question of whether the relationship between detriment and benefit is sufficient, is one of fact. *Id. See also* <u>In re K-Dur Antitrust Litig.</u>, 338 F. Supp. 2d 517, 544 (D. N.J. 2004).

Defendant also attacks the level of specificity with which plaintiffs plead, and contends that plaintiffs' allegations that they conferred a benefit is a bald statement of law that the court need not accept. But it is defendant's argument that is conclusory, and its citation to <u>First Ins. Funding Corp. v. Fed. Ins. Co.</u>, 284 F.3d 799, 804 (7th Cir. 2001), does not illustrate any point, except for providing a general principle and a set of facts that cannot be easily analogized. Moreover, in <u>First Insurance</u>, the plaintiff's conclusory statement was contradicted by counsel

at oral argument and by the pleadings. *Id.* at 805-06. Thus, the fatal flaw in the plaintiff's complaint was not so much a conclusory allegation, but that it would have to contradict the complaint in order to prevail on the merits. *See* <u>Kolupa v. Roselle Park Dist.</u>, 438 F.3d 713, 715 (7th Cir. 2006).

<u>Kolupa</u> instructs that if a party argues that a complaint lacks necessary factual allegations, courts must inquire what rule of law requires the complaint to contain those allegations. Here we have common law unjust enrichment, and there is no legal requirement for additional facts supporting plaintiffs' allegation that they conferred a benefit to defendant. As <u>Kolupa</u> emphasizes, "complaints need not plead facts and need not narrate events that correspond to each aspect of the applicable legal rule." <u>Kolupa</u>, 438 F.3d at 715. Plaintiffs say they purchased and leased vehicles manufactured by defendant, and by paying for those vehicles they conferred a benefit upon defendant (CAC at ¶¶ 109, 118, 128). These allegations satisfy the first prong of an unjust enrichment claim under the laws of the relevant states.

Defendant next contends that the safety recall moots Bisson's and Heath's unjust enrichment claims because by issuing the recall in 14 states, including Maine and Rhode Island, defendant states that it returned any benefit conferred to it. Plaintiffs riposte that the recall is both inadequate and incomplete, and does not represent a return of any benefit. Specifically, plaintiffs identify the recall as incomplete because it only applies to vehicles in 14 states, when defendant knew that the scope of the problem encompassed vehicles in the vast majority of states. Plaintiffs view the recall as inadequate because the recall procedure, which involves the application of Zinc-X, will only inhibit corrosion for up to two years, while the vehicles' useful lives are at least 10 years.

A motion to dismiss is typically not an appropriate vehicle for measuring the adequacy

or completeness of a party's conduct. If, as plaintiffs contend, the Zinc-X application provides only temporary relief, then the recall is truly inadequate. Despite defendant's remedial efforts, plaintiffs would still own defective vehicles that they claim they would not have purchased had they known of the defects. Defendant states that the relevant inquiry is not the adequacy of the recall, but whether any benefit is still retained. However, this is a circular argument because if an inadequate remedy is provided, such as one that fails to address the problem, the defendant has still retained a benefit in the form of payment for a defective vehicle. Defendant further contends that the "costly notice and diagnostic inspections," and the "time-consuming and expensive repairs" in Maine and Rhode Island, represent a return of benefits received. Following this argument, a highly expensive and time-consuming, yet completely futile remedial plan, would nevertheless constitute a divestiture of benefits, even though the plaintiffs receive nothing. This claim is entirely inconsistent with the basic premise that the remedy for unjust enrichment is the return of the benefit to the party who incurred the detriment.

Bisson and Heath contend that the recall is incomplete because it is limited to 14 states, but that argument should be made by consumers in states that are not subject to the recall. The recall's scope is not deficient from the perspective of Bisson and Heath – defendant attempted to address their defective ABS sensor problems. It is the adequacy of the remedy employed that defeats defendant's arguments against the unjust enrichment claims. Whether or not defendant sufficiently returned any benefits by issuing the recall presents questions of fact, which are inappropriate for resolution on a motion to dismiss. *See* <u>Bridgestone/Firestone Inc. v. Wilderness Tires Products Liability Litig.</u>, 155 F. Supp. 2d 1069, 1116-17 (S.D. Ind.

2001).[3]

In its final attack on the unjust enrichment claims, defendant argues that plaintiffs cannot seek relief under a quasi-contract theory because express contracts govern the subject matter.  Plaintiffs admit the existence of written agreements, but dispute that they govern the subject matter of their actions.  Typically, the presence of an express contract nulls any quasi-contract claim arising out of the same subject matter.  Such is the rule in the subject states. Lance Camper Mfg. Corp. v. Republic Indem. Co. of Am., 44 Cal. App. 4th 194, 203, 51 Cal. Rptr. 2d 622 (Cal. App. 2d Dist.1996) ("it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter."); People ex rel. Hartigan v. E & E Hauling, Inc., 153 Ill. 2d 473, 497, 607 N.E.2d 165, 180 Ill. Dec. 271 (Ill. 1992) (quotation marks omitted) ("Because unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application."); Horizon Props. v. Indian Corner Homes, 2004 WL 254582, 2004 R.I. Super. LEXIS 38, *11 n.3 (R.I. Super. 2004) ("Recovery for unjust enrichment may not be available where there is an express contract."); Nadeau v. Pitman, 1999 ME 104, P14 (Me. 1999) (quotation marks omitted) ("The existence of a contractual relationship, precludes recovery on a theory of unjust enrichment.").

Defendant alludes to governing purchase contracts, lease agreements, and express limited warranties, but provides no details of their coverages. Plaintiffs highlight that the express warranty "covers repairs to correct any vehicle related to materials or workmanship,"

---

[3] Defendant again attacks what it labels plaintiffs' "conclusory assertions" made in a "conclusory fashion," and for the reasons discussed above, particuarly those in the context of Kolupa, defendant's arguments on this point fail.

and depicts the claims as relating to defects in design.  We do not opine on the precise parameters of design, materials and workmanship.  Those terms may overlap and express contracts may indeed sink any implied contract claim, but it is premature to dismiss the quasi-contract claims based on contracts not adequately presented to the court.

In sum, the relevant state laws do not expressly mandate that plaintiffs directly confer a benefit to defendant in order to state claims for unjust enrichment, and plaintiffs need not buttress their otherwise adequate claims with factual allegations. Of course, the connection between detriment and benefit may be too attenuated to support any conferral of benefit from plaintiffs to defendant. *See* Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429 (3d. Cir. 2000).  But that presents questions of degree, and ultimately of fact.  In re Cardizem, 105 F. Supp. 2d at 671.  Defendant's recall does not moot Bisson and Heath's unjust enrichment claims.  The adequacy of the recall, as well as the sufficiency of any return of benefits, also present questions of fact. Lastly, mere invocation of a written contract does not automatically bar an unjust enrichment claim.

## Count IV – Breach of Implied Warranty of Merchantability

Defendant next contends that the breach of implied warranty of merchantability claim must be dismissed on two grounds: Bisson's failure to provide notice of the breach under 11 M.R.S. § 2-607, and his failure to plead that his vehicle is unmerchantable. Arguing in support of his claim, Bisson states that consumer complaints, including those made by party Norman Soohoo, and the filing of the class action complaint, furnished defendant with adequate notice of the breach. Bisson also defends his depiction of the vehicles as unmerchantable.  We first turn to the latter point.

Under 11 M.R.S. § 2-314(2)(c), a good product must be fit for its ordinary purpose.

Koken v. Black & Veatch Constr., Inc., 426 F.3d 39, 51 (1st Cir. 2005). The parties do not dispute that the ordinary purpose of a vehicle is transportation. But they do disagree as to the alleged defect's impact on the vehicles' usability. According to defendant, Bisson only claims that his vehicle failed to measure up to his expectations by not performing in a desired manner. By not alleging that the defect rendered his car inoperable, defendant argues that Bisson fails to plead unmerchantability. Bisson claims that the alleged defect resulted in "unwanted ABS activation." We think that defendant makes far too much of the word "unwanted." Problems and defects are rarely welcomed, and annoyances such as a mysterious squeak (Jolovitz v. Alfa Romeo Distribs. of N. Am., 760 A.2d 625, 627 (Me. 2000)), or major mechanical problems such as a blown head gasket (Faulkingham v. Seacoast Subaru, Inc., 577 A.2d 772 (Me. 1990)), are all "unwanted." Whether or not a defect renders a vehicle unfit for transportation depends not on how the defect is described.

Here Bisson alleges that the ABS sensor defect increases stopping distances at low speeds, and has thus presented evidence of the defect and the resulting problem. Guiggey v. Bombardier, 615 A.2d 1169, 1171-72 (Me. 1992) On every occasion that Bisson drives his vehicle, he faces the possibility of losing control over his brakes at least once per trip. A vehicle must necessarily come to a stop, and when a defect complicates or even prevents safe and reliable braking, it affects a major function of the vehicle.

The defect alleged here affects a primary driving function and is readily distinguishable from the defect alleged in Skelton v. General Motors Corp., 500 F. Supp. 1181, 1191-92 (N.D. Ill. 1980). In Skelton, the plaintiffs alleged that the defendant replaced the original transmission with an inferior model, but they did not allege that the replacement transmission adversely impacted the vehicle's operation. While "unwanted brake activation" is not

ostensibly as severe as the mechanical problems described in <u>Overland Bond & Investment Corp. v. Howard</u>, 9 Ill. App. 3d 348, 292 N.E.2d 168, 172-73 (Ill. App. 1st Dist. 1972), whether or not the ABS sensor defect rendered the car unfit presents questions of fact.

We pause to note that the expectation of non-defective brakes that will safely stop a vehicle is one held by ordinary consumers. It is not an isolated or subjective expectation of an unreasonable purchaser. *See* <u>Koken</u>, 426 F.3d at 52. Defendant's depiction of Bisson's expectation of non-defective brakes as a mere preference is a gross mischaracterization.

Turning to defendant's lack-of-notice argument, customarily a buyer who accepts tender of goods "must notify the seller of any breach within a reasonable time after he or she discovered or should have discovered any breach or be barred from any remedy." <u>Sullivan v. Young Bros. & Co., Inc.</u>, 91 F.3d 242, 250 (1st Cir. 1996); 11 MRS § 2-607(3)(a). A buyer who has been injured due to the breach is not obligated to provide notice to the seller. Section 2-607(7). Notice to the seller is required in order "to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." Section 2-607 cmt. 4. Benefits of notifying the seller of the breach include preventing stale claims, allowing the seller to investigate the claims, providing the seller with an opportunity to cure, and encouraging negotiation and settlement between the parties. <u>M.K. Associates v. Stowell Products, Inc.</u>, 697 F. Supp. 20, 21 (D. Me. 1988).

Defendant argues that the absence of any allegation of notice warrants dismissal of Count IV. Bisson acknowledges that notice must be furnished under section 2-607. He asserts that this requirement has been satisfied because defendant had actual notice of the defects due to the consumer complaints beginning in 1999, because co-plaintiff Soohoo complained to his dealer and to defendant about the problems with the brakes on his vehicle, and because the

complaint itself provides sufficient notice.

Section 2-607(3)(a) has not been subject to extensive analysis by Maine courts. In Sullivan v. Young Bros. & Co., 893 F. Supp. 1148, 1160 (D. Me. 1995), the court held that buyers need only notify immediate sellers. Neither Sullivan, nor any other Maine court, has held that notice is an element of a breach of warranty claim, as opposed to an affirmative defense. We do not think that Maine courts would require the allegation of notice that defendant seeks.[4] Moreover, and as discussed below in more detail, under liberal federal pleading standards, we believe the complaint does allege that defendant was on notice of the alleged defect, and that a specific pre-suit complaint by Bisson to defendant is not required.

In Sullivan the district court adopted the less restrictive option and held that a plaintiff need not provide separate notice to remote sellers. The First Circuit looked at the totality of information presented to a defendant when it concluded that the defendant had constructive knowledge of a product defect. Sullivan, 91 F.3d at 250-51. See also Sullivan, 893 F. Supp. at 1159. Under this approach the lack of a specific complaint from a particular customer should not eclipse the defendant's actual knowledge of a problem. Defendant, citing Illinois law, argues that generalized awareness of a breach, even if informed by actual knowledge, does not satisfy the section 2-607 notice requirement.

In Connick v. Suzuki Motor Co., Ltd., 174 Ill.2d 482, 675 N.E.2d 584, 589-90, 221 Ill. Dec. 389 (Ill. 1997), the court noted that direct notice is not required when the seller actually knows about the defect of a particular product, or the seller is reasonably notified by the filing

---

[4]In support of its position that notice must be pled, defendant cites Hobbs v. General Motors Corp., 134 F. Supp. 2d 1277 (M.D. Ala. 2001), which applies the law of Alabama, a state not represented in Count IV. See id. at 1283 ("Under Alabama law, notice of breach is a condition precedent to bringing a breach of warranty action, which must be affirmatively pleaded in the complaint.... No allegation of notice has been pled in this case."). Similarly, Illinois, which is not represented in Count IV, also views notice as an element of a warranty claim. Industrial Hard Chrome, Ltd. v. Hetran, Inc., 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999).

of the buyer's complaint. The plaintiffs alleged that the defendant designed and manufactured vehicles that were unsafe due to an excessive risk of rolling over. The plaintiffs contended that they were not required to provide the defendant with direct notice because the defendant actually knew about the vehicles' problems through information received from newspapers, magazines, and various third parties. Rejecting that argument, the court concluded that a seller is entitled to be notified of a problem with a particular transaction, despite the fact that the seller knew that the problems affected an entire product line. Justice McMorrow, joined by Justice Freeman, departed from the majority on this point and observed that notice of every particular breach was unnecessary because plaintiffs alleged a design defect, which meant every vehicle in the product line was defective. *Id.* at 598 (McMorrow, J., dissenting). The dissent also opined that requiring notice from every vehicle owner would be both redundant and impractical. *Id.*

Following <u>Connick</u>, <u>Perona v. Volkswagen of America, Inc.</u>, 292 Ill. App. 3d 59, 684 N.E.2d 859, 225 Ill. Dec. 868 (Ill. App. 1st Dist. 1997), held the defendant's knowledge that a vehicle it manufactured and distributed might well have defects, did not satisfy the section 2-607 notice requirement. In <u>Perona</u>, the defendant had sent recall letters to plaintiffs, published press releases, and even proposed a class settlement agreement, yet the court held that the recall notices did not amount to an admission of responsibility, and that the press releases did not provide notice about a particular transaction. But that is Illinois law. Under Maine law the sufficiency of notice is not measured by a defendant's ability to determine whether it is liable, and notice is not insufficient if the defendant fails to admit responsibility. Rather, notice need only "merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." Section 2-607 cmt. 4.

Remedies provided under Maine's commercial code are to be "liberally administered." 11 MRS § 1-106(1); Crescent Lumber Co. v. Maine Packaging Equip., Inc., 1995 Me. Super. LEXIS 449 (Me. Super. Ct. 1995). Further, as noted above, the notice requirement is not meant, and should not function, to deprive a consumer of a remedy. Section 2-607 cmt. 4. We do not think that the defendant's position is consistent with these principles. Sufficiency of notice is generally a question of fact. But, when no notice has been alleged, no factual issues are presented. Here, plaintiffs have alleged that defendant had ample pre-suit notice of the alleged ABS sensor defect. Paragraphs 28 through 75 of the complaint set forth in detail consumer complaints, investigation by Transport Canada, and defendant's Canadian recall. Transport Canada specifically informed defendant that the braking malfunction could potentially affect "every vehicle where corrosion is a factor." (CAC, ¶ 34). Defendant also knew that Transport Canada considered the problem to be the result of "a gross shortcoming in the design of the system." (¶ 29(e); see also ¶ 60). Plaintiffs allege that defendant had received complaints since at least 1999 (¶ 52). And they further allege that defendant had in its possession consumer complaints, surveys, analyses, and other test data (¶ 79). Taken together, plaintiffs have alleged that defendant was well aware of the problem affecting their vehicles. From this notice, a fact-finder could infer that defendant was afforded sufficient opportunity to investigate the defect, devise a cure, and prepare for any necessary negotiation or settlement.

We do not think that under these circumstances individual complaints about particular vehicles are required. Plaintiffs allege that defendants knew the ABS sensor problem was due to a design defect that affected a class of vehicles (see ¶ 69, alleging that defendant was aware "since at least January 1999, that ALL 1999 through 2002 model year C/K series GMT800

platform vehicles equipped with an antilock brake system sold in both the Class States and Canada – without regard to geographic location – are defectively designed ..."); (¶ 72, alleging that defendant's internal documents confirm that all of the vehicles sold in the class states have the same bearing assembly and speed sensor design). A complaint from one consumer is, alone, insufficient to provide notice of another consumer's problems. Thus, Soohoo's complaints to dealerships and defendant do not provide notice on behalf of Bisson. However, when a number of consumers complain about the same problem, and it becomes apparent (or it is alleged) that the consumers' problems are caused by a defect in design, then it may be said that other consumers in the same class (*i.e.*, owners of the same product) will have the same problem. Thus, once defendant knew that a class of vehicles were defectively designed, it was put on at least constructive notice that every vehicle within that class was defective. *See* Connick, 675 N.E.2d at 598 (McMorrow, J., dissenting). To require every single member of the class, which allegedly numbers in the hundreds of thousands, to provide notice is not a reasonable proposition.

Bisson also argues that the class action complaint provides the required notice of breach under section 2-607. This issue has not been taken up by the Maine courts, and Bisson offers two decisions from other jurisdictions in support of his position. In Strzakowlski v. General Motors Corp., 2005 WL 2001912, 2005 U.S. Dist. LEXIS 18111 (D. N.J. 2005), the court concluded that notice-by-suit was consistent with the underlying goal of the notice requirement – opening the door to settlement through negotiation.[5] In Bridgestone, *supra*, the court

---

[5] Defendant attempts to minimize Strzakowlski by depicting its discussion of the complaint providing notice as *dicta*. In Cipollone v. Liggett Group, Inc., 683 F. Supp. 1487 (D. N.J. 1988), the case Strzakowlski expressly followed, the court rejected the defendant's motion to dismiss for lack of notice, on the "alternative reasons" that notice to a remote manufacturer was not required and that the complaint provided notice. With respect to the first reason for obviating the notice requirement, the court relied on Santor v. A & M Karagheusian, Inc., 44 N.J. 52 (N.J. 1965), in which the plaintiff gave notice of a defect to his immediate seller, but not to the defendant, a remote manufacturer. In Strzakowlski the plaintiffs failed to provide notice

concluded that the plain language of section 2-607 does not require pre-litigation notice under all circumstances. Instead, the court observed that section 2-607 only requires that notice be given "within a reasonable time" after the discovery of a breach. The court further discussed how notice-by-suit would not undermine the primary policies of the notice-of-breach requirement, such as promoting settlement and preventing stale claims.

We agree with these courts' analyses that notice by complaint meets the stated goals of section 2-607. Stale claims could easily be disposed of on statute of limitations grounds; the filing of the complaint crystalizes the alleged problem by identifying plaintiffs and fleshing out details of the breach; and the initiation of litigation provides additional incentives for settlement. But we are not presented with allegations that require us to opine whether notice by complaint is *per se* insufficient or that a complaint will always provide sufficient notice. Here we have determined that defendants had ample notice prior to the complaint, and the complaint further satisfies section 2-607's policies for the reasons set forth in Strzakowlski and Bridgestone, and as noted above. *See also* Shooshanian v. Wagner, 672 P.2d 455, 462 (Alaska 1983).

In sum, it can be said that plaintiffs have at least stated a claim that, through a number of consumer complaints and official investigations, defendant had "early warning" of the breach. American Mfg. Co. v. United States Shipping Bd. Emergency Fleet Corp., 7 F.2d 565, 566 (2d Cir. 1925). Whether or not notice is sufficient to satisfy section 2-607 is an issue of fact. Bridgestone, 155 F. Supp. 2d at 1111; M.K. Associates, 697 F. Supp. at 21 ("What constitutes reasonable time depends on the particular circumstances of a case.").

---

to either the remote manufacturer or its authorized dealers. Thus, if the court favored one of Cipollone's reasons over the other, the preferred rationale would be that of the sufficiency of the complaint.

## Count V – California Consumer Legal Remedy Act (CLRA)

In Count V, Fales, on behalf of California residents, alleges that defendant's failure to inform consumers of the design defect affecting the ABS sensor constituted an unfair or deceptive act prohibited by sections 1770(a)(5) and (7) of the CLRA. Courts are instructed to liberally construe and apply the CLRA in order to achieve its "underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Broughton v. Cigna Healthplans, 21 Cal.4th 1066, 1077, 90 Cal. Rptr. 2d 334 (Cal. 1999) (quoting section 1760).

Count V requires this court, in Illinois, to immerse itself in the vagaries of California law. We do so with some trepidation, particularly since on some issues we part company from both the plaintiffs and defendant.

According to defendant, Count V is subject to dismissal on several grounds, including the failure to plead fraud with specificity. A claim brought in federal court that alleges fraud and seeks recovery under the CLRA is subject to heightened pleading requirements of Rule 9(b). Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102-03 (9th Cir. 2003). Rule 9(b) requires that averments of fraud be made with specific detail, including the who, what, when, where, and how of the specific misconduct, so the defendant may defend the charges and not merely deny them. Id. at 1106. When a plaintiff complains of a false or misleading statement, he or she must identify the statement and set forth why it is false. Id.

Under section 1770(a)(5), it is deceptive or unfair to "represent[ ] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." According to defendant, absent from Count V are any

allegations that it represented to Fales that her truck had certain characteristics that it actually did not have. And under section 1770(a)(7), it is deceptive or unfair to "represent[ ] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendant contends that Fales does not allege that defendant falsely represented her vehicle to be of a certain standard, quality, or grade. Whether or not Fales states a claim under the CLRA depends in large part on how defendant's allegedly violative conduct is construed. Defendant depicts its representations as benign, but Fales asserts that her claim is based on defendant's omissions

Defendant focuses on three public statements: (1) the January 2005 notice of product safety recall that affected certain Canadian vehicles (CAC at ¶ 67); (2) a statement attributed to defendant's spokesperson that claims the United States recall was effected based upon incident rates (¶ 82); and (3) the United States recall, which was limited to 14 salt belt states (¶ 88). According to defendant, the recall notices are not expressly limited to the states and provinces mentioned, and are therefore not false in light of its alleged knowledge that many vehicles in other states and provinces were subject to corrosion. Defendant argues that the second statement is only false when incident rates are confused with incident quantities. Fales counters, asserting that her CLRA claim is based on defendant's omissions rather than any affirmative representations, and further argues that defendant's focus on the accuracy of the three affirmative representations is nothing more than a straw man argument. Fales explains that the complaint includes specific reference to defendant's statements only to show that defendant knew about the defects, yet failed to disclose them.

Case law indicates that a CLRA claim may be based on non-disclosure of material information. *See* <u>Trew v. Volvo Cars of N. Am.</u>, 2006 U.S. Dist. LEXIS 4890 (E.D. Cal. 2006)

(CLRA claim is brought, alleging defendant's concealment of a defect); Cruz v. PacifiCare Health Systems, Inc., 30 Cal.4th 303, 308, 66 P.3d 1157, 1159, 133 Cal. Rptr. 2d 58, 61 (Cal. 2003) (alleging that through material misrepresentations and omissions the defendant fraudulently induced healthcare consumers to enroll in its healthcare plans); Chamberlan v. Ford Motor Co., 369 F. Supp. 2d 1138 (N.D. Cal. 2005) (alleging that defendant failed to disclose defects with vehicles' intake manifolds). Accepting that Fales may base the CLRA claim on alleged non-disclosures, defendant argues that California law requires Fales to allege that defendant had a duty to disclose. This argument was recently rejected by a California federal district court.

In Chamberlan, *supra,* the plaintiffs alleged that the defendant concealed material information about intake manifolds in vehicles purchased by plaintiffs. The parties disagreed as to the elements of a CLRA claim, with the defendant positing that plaintiffs were required to prove the elements of common law fraud, which include the existence of a duty of reasonable care, and the intentional breach of that duty. The court disagreed, and concluded that CLRA actions need not plead the existence of a duty. Chamberlan, 369 F. Supp. 2d at 1144. Instead, a plaintiff raising a CLRA claim based on a non-disclosure need only allege materiality, causation, and damages. *Id.* at 1144-46. Aside from distinguishing two cases cited by the defendant, the Chamberlan court did not provide extensive analysis supporting its conclusion that pure omissions are actionable under the CLRA.

In the cases cited by defendant, the plaintiffs explicitly alleged duties to disclose under specific statutory authority. These cases do not impose an affirmative obligation on any plaintiff seeking recovery under the CLRA to plead the existence of a duty. For example, in Bescos v. Bank of America, NT & SA, 105 Cal. App. 4th 378, 129 Cal. Rptr. 2d 423 (Cal. App.

2d Dist. 2003), the plaintiff sued a lessor car dealer and the bank that financed the lease, alleging that the dealer made certain misrepresentations. After settling with the dealer, the plaintiff maintained that the bank was liable for the dealer's misrepresentations, which allegedly violated the CLRA. The plaintiff argued, for the first time on appeal, that the bank violated the CLRA by omitting the "FTC Holder Rule" from the lease agreement.[6] *Id.* at 431-32. Rejecting this argument, the court concluded that the FTC Holder Rule did not apply because the transaction was wholly intrastate. *Id.* at 433. The court further concluded that the dealer's failure to comply with disclosure requirements did not constitute deceptive practices, as set forth in section 1770. *Id.* at 434. Thus, Bescos only stands for the not-so-stunning proposition that a plaintiff cannot prevail on a failure to disclose theory when no disclosure is required. Nowhere does the case specifically establish that a plaintiff must allege a defendant's duty to disclose as an element of a CLRA claim.

Similarly, in Pastoria v. Nationwide Ins., 112 Cal App. 4th 1490, 6 Cal. Rptr. 3d 148, 150 (Cal. App. 2d Dist. 2003), the plaintiffs brought an action against their insurance company alleging that it had a duty to notify them about policy changes prior to their purchase of an insurance policy. As in Bescos, the plaintiffs claimed that disclosure was required by a specific law, here, provisions of the California Insurance Code. *See id.* at 153 ("Plaintiffs' argument is based upon a literal reading of those [Insurance Code sections]."). According to the plaintiffs, non-disclosure also amounted to fraud and negligent failure to disclose, which are tort claims that specifically require the existence of a duty. Thus, the plaintiffs' case hinged on alleged violations of the Insurance Code, which regulated the defendant's conduct.

---

[6] In order to be liable for the dealer's misrepresentations, the bank must have been a lessor of vehicles. Bescos, 129 Cal. Rptr. 2d at 429. The court concluded that the bank was an assignee, rather than a lessor. *Id.* at 431. As an assignee, the bank could only be liable for defects on the face of the lease agreement. *Id.* at 429.

In contrast, Fales does not contend that defendant's conduct violated any statute or regulation independent of the CLRA, which itself does not require a plaintiff to allege that a defendant has a duty to disclose. Nor does Fales contend that defendant engaged in tortious conduct. Actions "brought under the [CLRA] are governed exclusively by its own provisions," (Wang v. Massey Chevrolet, 97 Cal. App. 4th 856, 869, 118 Cal. Rptr. 2d 770 (Cal. App. 2d Dist. 2002)); therefore, we will not hold Fales responsible for alleging elements of claims that are extrinsic to the complaint.

Defendant also relies on Outboard Marine Corp. v. Superior Court of Sacramento County, 52 Cal. App. 3d 30, 124 Ca. Rptr. 852 (Cal. App. 3d Dist. 1975), in which the plaintiffs brought two claims against defendants, who were manufacturers and distributors of an off-road vehicle. In the first claim the plaintiffs alleged that defendants fraudulently concealed the vehicle's defective design, and that it owed a duty to consumers to disclose any design defects. And in the second claim, the plaintiffs alleged that defendants violated the CLRA by deceitfully and falsely representing that the vehicle had certain attributes. The court held that the CLRA provided an exclusive remedy, and that plaintiffs' first and second causes of action alleged the same harm, in that the concealment of a fact and misrepresentation of the same fact both amount to fraud. *Id.* at 36-37. The court also observed that the suppression of a fact may constitute fraud or deceit "by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact." *Id.* at 37. This language is not endemic to CLRA claims, but is instead merely an element of fraud under California law. *See* Ekeh v. Hartford Fire Ins. Co., 39 F. Supp. 2d 1216, 1218 (N.D. Cal. 1999);

Recently, the court in Bardin v. DaimlerChrysler Corp., 136 Cal. App. 4th 1255, 39 Cal. Rptr. 3d 634 (Cal App. 4th Dist. 2006), quoted Outboard Marine and treated its reference to

fraud as elemental to a CLRA claim alleging omission. The plaintiffs in Bardin raised a CLRA

claim similar, but not identical, to that brought by Fales. They alleged that the defendant

failed to disclose material facts about exhaust manifolds in vehicles that they purchased, and

intentionally concealed those facts in order to have plaintiffs buy the vehicles. *Id.* at 648. Just

as Fales claims, the plaintiffs alleged that the defendant's conduct violated sections 1770(a)(5)

and (7). Relying on Outboard Marine, the court dismissed the plaintiffs' CLRA claim because

plaintiffs failed to allege that the defendant was "bound to disclose" the omitted information

or that it provided any information of other facts that could be misleading "for want of

communication" of that information.[7]

　　　We believe that both parties have glossed over an important distinction. The issue is

not simply whether a CLRA claim must plead the elements of fraud. Rather, the issue is

whether a CLRA claim that alleges fraud by omission must plead the elements of fraud. The

language in Outboard Marine, which was taken up by Bardin, solely concerns fraud.

Outboard Marine's reference to Moe v. Transamerica Title Ins. Co., 21 Cal. App. 3d 289, 98

Cal. Rptr. 547 (Cal. App. 1st Dist. 1971) reinforces that point. Because fraud is not an essential

element of a CLRA claim (Vess, 317 F.3d 1097 at 1103, 1105), a CLRA claim need not

invariably plead the elements of fraud.

　　　The issue in Vess was whether Rule 9(b) applied to a case in which fraud was not an

essential element, but where allegations of fraudulent and non-fraudulent conduct are made

in the complaint. *Id.* at 1104. The court concluded that all claims grounded in fraud must

meet Rule 9(b) pleading standards, even if fraud was not an essential element in those claims.

And all claims that rested on non-fraudulent conduct should not be measured by Rule 9(b)

---

[7]We note that Bardin is the only published case that we have discovered that has applied Outboard Marine in this manner to a CLRA claim.

standards. Much depends, then, on how a plaintiff constructs her complaint. <u>Vess</u> thus provides guidance for analyzing complaints alleging CLRA violations, but it only takes us so far because it does not address whether a complaint alleging fraud by omission must also allege a duty to disclose.

Under California law, the first element of fraud is a misrepresentation which may be shown by a false representation, concealment, or nondisclosure. <u>Robinson Helicopter Co., Inc. v. Dana Corp.</u>, 34 Cal. 4th 979, 990, 22 Cal. Rptr. 3d 352 (Cal. 2004). Fraudulent concealment has been described to include "nondisclosure when there is a duty to disclose." <u>Lovejoy v. AT&T Corp.</u>, 119 Cal. App. 4th 151, 153, 14 Cal. Rptr. 3d 117 (Cal. App. 3d Dist. 2004). Courts have emphasized the duty to disclose requirement when plaintiffs allege fraud by concealment. *See* <u>Charpentier v. Los Angeles Rams Football Co.</u>, 75 Cal. App. 4th 301, 312, 89 Cal. Rptr. 2d 115 (Cal. App. 4th Dist. 1999); <u>Stevenson v. Baum</u>, 65 Cal. App. 4th 159, 165, 75 Cal. Rptr. 2d 904 (Cal. App. 3d Dist. 1998); <u>Mosier v. Southern Cal. Physicians Ins. Exchange</u>, 63 Cal. App. 4th 1022, 1045, 74 Cal. Rptr. 2d 550 (Cal. App. 3d Dist. 1998). *See also* 37 AM. JUR.2d *Fraud and Deceit* § 200 ("An action for fraud and deceit can be maintained not only if affirmative representations are made, but also for negative misrepresentations, such as the failure of a party to a transaction to fully disclose facts of a material nature where there exists a duty to speak."); 26 Williston on Contracts § 69.17 (4th ed.) ("failure to disclose or concealment of a material fact can work a fraud where a duty to disclose exists.").

As noted above, the CLRA does not require proof of the elements of fraud, but when a plaintiff specifically alleges fraud, nothing in the CLRA excuses her from alleging and eventually proving the elements of fraud. Thus, Fales was not required to claim that defendant's conduct was fraudulent, but she chose to do so. Allegations of a CLRA violation

are not tantamount to alleging the elements of fraud. Concluding otherwise would allow a plaintiff to accuse a defendant of acting fraudulently without having to prove those accusations.

We have, however, put the proverbial cart before the horse. Fales must allege a duty to disclose if she claims fraud by omission, but it is not entirely clear from the complaint that she alleges fraud. It is true that in her opposition to the motion to dismiss, she repeatedly describes her claim as a fraud claim, both with specific reference (plfs. resp. at p. 26 "fraud by omission,"; p. 28 ("GM was able to accomplish this fraud by means of an omission,")), and implicitly, by arguing sufficiency of the complaint under Rule 9(b), which is only necessary under <u>Vess</u> if the complaint sounds in fraud. But just as a memorandum in opposition to a motion to dismiss cannot be used to amend a complaint (*see* <u>Harrell v. United States</u>, 13 F.3d 232, 236 (7th Cir. 1993)), we do not think that a party's explanation of an otherwise sufficient complaint should doom the complaint.

Turning to the language of Count V, Fales does not specifically mention "fraud," but use of that magic word is not necessary. Fales does label defendant's failure to disclose as deceptive, and <u>Outboard Marine</u> provided that non-disclosure may constitute deceit by one with a duty to disclose or one who made a misleading statement. But by describing defendant's conduct as "deceptive," Fales could merely be tracking the language of the CLRA (*see* section 1770(a)). A party alleges fraud if the facts pled "necessarily constitute fraud." <u>Vess</u>, 317 F.3d 1097. The elements of fraud under California law are "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Id.* (quotation marks omitted). Under notice pleading standards, Fales has alleged a false representation (which includes non-disclosure, as discussed above) (CAC ¶ 146), knowledge of falsity (¶ 144-

45), reliance (¶ 148), and damages (*id.*). She has not, however, alleged intent to defraud. Above we noted that the allegations in <u>Bardin</u> were similar, but not identical, to those made by Fales. The difference between the allegations is that the plaintiffs in <u>Bardin</u> specifically alleged an intent to defraud. The absence of any allegation as to defendant's intent to deceive does not necessarily mean that Count V presents a CLRA claim. It could also evidence an incomplete fraud claim.

Citing <u>Chamberlan</u>, Fales claims that she need only allege a material omission, causation, and damages.[8] However, if she chooses to ground her CLRA claim in fraud, as she argues is the case, then she must also allege the elements of fraud. And because the complaint alleges misrepresentation through omission, it must also allege a duty to disclose. In light of the conflicting manner in which Fales pleads and portrays Count V, and the resulting confusion as to the nature of the claim asserted, Count V is dismissed without prejudice. We thus do not reach the question that we initially set out to answer: whether Count V satisfies Rule 9(b).

Defendant offers additional reasons in support of its motion to dismiss the CLRA claim. It first argues that Fales has not submitted an affidavit pursuant to section 1780(c) of the California Civil Code. Under section 1780(c), a plaintiff commencing an action under the CLRA is required to file, concurrently with the complaint, an affidavit stating that the action

---

[8] In arriving at its definition of "materiality," <u>Chamberlan</u>, 369 F. Supp. 2d at 1144 borrowed from <u>Mirkin v. Wasserman</u>, 5 Cal. 4th 1082, 1093, 23 Cal. Rptr. 2d 101 (Cal. 1993), which discussed material omissions in the context of whether a plaintiff needed to prove actual reliance under California's law of deceit. We cannot determine with certainty whether the plaintiffs in <u>Chamberlan</u> claimed that defendant's fraud by omission violated the CLRA. The court did note that plaintiffs' Unfair Competition Law claims were based on the underlying CLRA claims which focused on the defendant's unlawful, rather than fraudulent acts. <u>Chamberlan</u>, 369 F. Supp. 2d at 1146. However, in the ruling on class certification, the court noted that the "typicality requirement is satisfied because the named plaintiffs and the members of the proposed class 'all have claims arising from the same fraudulent scheme.'" <u>Chamberlan v. Ford Motor Co.</u>, 223 F.R.D. 524, 526 (N.D. Cal. 2004).

has been commenced in the proper county. Failure to file this affidavit mandates dismissal without prejudice. Section 1780(c) identifies the proper county as the county "in which the person against whom [the action] is brought resides, has his or her principal place of business, or is doing business, or in the county where the transaction or any substantial portion thereof occurred." Fales questions whether the section 1780(c) affidavit requirement is applicable to actions filed in federal court, highlighting the provision's focus on the proper county, but she does not pursue that argument at length. Further, it would seem that allegations of venue under 28 U.S.C. § 1391, tailored to section 1780(c)'s requirements, would be satisfactory. In the complaint, Fales has generally alleged that venue is proper. Fales states that an affidavit restating why venue is proper will be forthcoming. In light of our ruling above, this is not a contested matter.

Lastly, defendant contends that the CLRA only allows individual plaintiffs to bring class actions, and does not provide for representative actions. Similar to the Rule 9(b) issue discussed above, we believe that this issue is more complex than the parties present it. In paragraph 10 of the complaint, Fales states that she "asserts claims as a private attorney general on behalf of members of the general public of California," pursuant to the CLRA. These claims are raised in addition to the class action claims. Fales explains that by bringing the claims as a private attorney general, she does not seek compensatory damages on her own behalf. Rather, she seeks the disgorgement of any profits that defendant received from similarly wronged purchasers.[9] By seeking relief in this manner, Fales has jeopardized her standing, which casts doubt on the court's subject matter jurisdiction over her private attorney general claim.

---

[9] In Count V Fales seeks only injunctive relief.

Defendant does not challenge the representative action on standing grounds, but we may address the issue *sua sponte* because if Fales is without standing, she does not bring a case or controversy under Article III, and we lack subject matter jurisdiction. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 101 (1998). Under these circumstances, dismissal is pursuant to Rule 12(b)(1). To have standing a plaintiff must present a concrete and particularized injury-in-fact that is traceable to defendant's conduct and may be redressed by a judicial remedy. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

Fales must have standing for the claims brought on her own behalf and those brought as a private attorney general. VonGrabe v. Sprint PCS, 312 F. Supp. 2d 1313, 1323 (S.D. Cal. 2004). Fales seeks restitution of defendant's wrongfully obtained profits, but she expressly disavows any interest in receiving compensatory damages. Thus, assuming that Fales has alleged an injury that is fairly traceable to defendant's conduct, she cannot show that a judicial remedy will redress any injury that *she* has suffered. Further, Fales may not borrow the standing of "the members of the general public of California" who would directly benefit from any judicial remedy. As standing is absent here, the private attorney general allegations must be dismissed. *See* Nike, Inc. v. Kasky, 539 U.S. 654, 661 (2003) (Stevens, J., concurring in dismissal of *writ of certiorari*).

Even if Fales sought damages on her own behalf, we do not think that a private attorney general action is permissible under these circumstances. The private attorney general allegations are brought in addition to the class action claims and pursuant to the CLRA. Representative actions are distinct from class actions. People v. Pacific Land Research Co., 141 Cal. Rptr. 20, 569 P.2d 125 (Cal. 1977). Unlike a class action claim, no certification is

required in a representative action. Kraus v. Trinity Management Services, Inc., 23 Cal. 4th 116, 126 n.10, 999 P.2d 718 (Cal. 2000). Further, courts have observed that a plaintiff who brings a representative action need not show, as a matter of state law, that she was directly harmed, but a plaintiff who brings a class action sues on her own behalf and must have incurred damages. Corbett v. Superior Court, 101 Cal.App.4th 649, 670, 125 Cal. Rptr. 2d 46, 61 (Cal. App. 1st Dist. 2002).

The vast majority of California cases involving private attorney general actions are brought pursuant to section 17204 of California's Unfair Competition Law (UCL). *See, e.g.,* Stop Youth Addiction, Inc. v. Lucky Stores, Inc., 17 Cal. 4th 553, 567, 71 Cal. Rptr. 2d 731 (Cal. 1998). Until a 2004 amendment, section 17204 specifically allowed for private attorney general actions brought by plaintiffs who suffered no direct injury.[10] Fales does not identify any provision in the CLRA that authorizes private attorney general actions. The CLRA only explicitly provides for consumer class actions in section 1781. Given that the California legislature has expressly authorized representative actions in other statutory provisions (*see* section 17204 of the UCL and section 2698(d) of the Labor Code), we must assume that the legislature did not intend for representative actions to be brought under the CLRA.[11]

In support of her claim that the CLRA allows for representative actions, Fales cites Coast Plaza Doctors Hospital v. Blue Cross of California, 83 Cal. App. 4th 677, 99 Cal. Rptr.

---

[10] The amendment changed the final phrase of the paragraph, and replaced "acting for the interests of itself, its members or the general public," with "who has suffered injury in fact and has lost money or property as a result of such unfair competition." Thus, the amendment limits representative actions to situations where the person bringing the suit suffers an injury and complies with section 382's class action procedures. Again, Fales brings the representative action under the CLRA, and reference to the UCL is made merely to illustrate the legislature's express authorization for private attorney general actions.

[11] Representative actions and citizen-suits are typically brought under authorizing statutes. *See generally* Trevor W. Morrison, *Private Attorneys General and the First Amendment*, 103 MICH. L. REV. 589, 603 (2005); Jay L. Himes, *Exploring the Antitrust Operating System: State Enforcement of Federal Antitrust Law in the Remedies Phase of the Microsoft Case*, 11 GEO. MASON L. REV. 37, 65 n. 134 (2002).

2d 809, 820 (Cal. App. 2d Dist. 2000). The court in <u>Coast Plaza</u> stated that a claim for injunctive relief under the UCL was brought by a plaintiff acting as a private attorney general, "[m]uch like a claim for injunctive relief under the CLRA." <u>Broughton v. Cigna Healthplans</u>, 21 Cal. 4th 1066, 1080-81, on which <u>Coast Plaza</u> relied, found that a plaintiff seeking an injunction under the CLRA was acting as a private attorney general because the benefits of an injunction primarily accrued to the general public, and not to the individual plaintiff. Both <u>Coast Plaza</u> and <u>Broughton</u> described claims for injunctive relief under the CLRA and UCL as private attorney general actions in the context of determining whether such claims were subject to arbitration. From those very specific discussions it is difficult to extrapolate a general sanction for representative actions seeking restitution. Thus, even if Fales changed course and pursued damages on her own behalf, she could not do so as a private attorney general under the CLRA.

<u>Count VI – Illinois Consumer Fraud Act (ICFA)</u>

Muehlbauer brings Count VI individually and on behalf of similarly situated Illinois residents, and alleges that defendant's non-disclosure of the ABS sensor defect violated the ICFA. Defendant contends that Count VI should be dismissed because Muehlbauer has failed to allege actual damages, causation, and any affirmative misrepresentation made by defendant. Defendant further argues that Count VI is not pled with particularity. Count VI is not subject to the infirmities that defendant identifies.

In order to state a claim under the ICFA, a plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." <u>Oliveira v. Amoco</u>

Oil Co., 201 Ill.2d 134, 149, 776 N.E.2d 151, 160, 267 Ill. Dec. 14 (Ill. 2002); Geschke v. Air Force Ass'n, 425 F.3d 337, 345 (7th Cir. 2005); Eromon v. Grand Auto Sales, Inc., 351 F. Supp. 2d 825, 827 (N.D.Ill. 2004). Consumers raising ICFA claims are afforded "far broader" protection than those who bring common law fraud claims. Celex Group, Inc. v. Executive Gallery, Inc., 877 F. Supp. 1114, 1128-29 (N.D.Ill. 1995). Moreover, courts are to liberally construe the ICFA. Connick v. Suzuki Motor Co., Ltd., 174 Ill.2d 482, 675 N.E.2d 584, 594, 221 Ill. Dec. 389 (Ill. 1996).

Similar to Count V, the deceptive acts complained of in Count VI are defendant's non-disclosure and concealment of the alleged defect. Muehlbauer explains that reference to defendant's public statements is made to evidence defendant's knowledge of the defect. The concealment or omission of a material fact in the conduct of commerce constitutes consumer fraud. Connick, 675 N.E.2d at 595; Pappas v. Pella Corp., 844 N.E.2d 995, 998, 300 Ill.Dec. 552 (Ill. App. 1st Dist. 2006). A fact is material if "the plaintiff would have acted differently had she been aware of it, or if it concerned the type of information upon which she would be expected to rely in making her decision to act." Mackinac v. Arcadia Nat'l Life Ins. Co., 271 Ill. App. 3d 138, 648 N.E.2d 237, 239, 207 Ill.Dec. 781 (Ill. App. 1st Dist. 1995). Common law fraudulent concealment claims must allege that the defendant had a duty to disclose the omitted fact to the plaintiff. This is not the case with statutory fraudulent concealment claims, which do not require allegations of a duty to disclose. Connick, 675 N.E.2d at 595; Industrial Enclosure Corp. v. Northern Ins. Corp., 2000 U.S. Dist. LEXIS 11567, *23-24 (N.D. Ill. 2000); Lueck v. General Motors Corp., 1997 U.S. Dist. LEXIS 10604 (N.D. Ill. 1997).

As noted above, in Connick the plaintiffs alleged that the defendant knew that a vehicle it manufactured had a tendency to roll over, but did not disclose this information to the public.

The plaintiffs further alleged that had they known this information, they would not have purchased the defendant's vehicle. The Illinois Supreme Court found these allegations stated a claim for consumer fraud. Muehlbauer's allegations closely track those made in Connick. He alleges that defendant manufactured vehicles with a defect (CAC ¶¶ 153-54, 56), and that defendant knew about this defect as early as January 1999 (¶ 155). Despite this knowledge, the defendant did not disclose the defect (¶ 157). Muehlbauer further alleges that he would not have purchased his vehicle had he known of the defect (¶ 160). He also contends that defendant intended for consumers to rely on the omission of the defect (¶ 158).

As Muehlbauer's allegations rest on defendant's non-disclosure of the defect, defendant's challenge on the ground that the complaint lacks allegations of affirmative misrepresentations misses the mark. Flowing from the lack of affirmative misrepresentations argument is defendant's contention that Muehlbauer has failed to show actual deception. However, the authority that defendant cites in support of that proposition involves affirmative misstatements rather than non-disclosure of material fact. *See* Shannon v. Boise Cascade Corp., 208 Ill.2d 517, 525, 805 N.E.2d 213, 281 Ill. Dec. 845 (Ill. 2004). Similarly, because Muehlbauer's fraudulent concealment claim does not hinge on defendant's public statements, it does not matter that those statements were made after Muehlbauer purchased his vehicle.

Defendant does not benefit from reference to Oliveira, in which the plaintiff's claims rested on misrepresentations rather than omissions. In Oliveira the court concluded that the plaintiff could not establish causation between his injury and the defendant's deceptive advertising because he failed to allege that he saw, heard or read any of defendant's advertisements. Oliveira, 776 N.E.2d at 163. When fraudulent concealment is alleged, it is enough that a plaintiff state that he would have acted differently had the material facts been

disclosed. *See* Pappas, 844 N.E.2d at 1003-04. Moreover, Muehlbauer does not rely on a complicated fraud on the market theory like that presented by the plaintiffs in Oliveira. Instead, he claims that his damages were directly caused by defendant's non-disclosure.

A private person who brings an action under the ICFA must suffer actual damages (815 ILCS 505/10a(a); Oliveira, 776 N.E.2d at 160), and the defendant's deception must have caused these damages. Priebe v. Autobarn, Ltd., 240 F.3d 584, 589 (7th Cir. 2001). An allegation of proximate cause "is minimal since that determination is best left to the trier of fact." Connick, 675 N.E.2d at 595. Muehlbauer asserts that he purchased a defective vehicle for the price of a non-defective vehicle. Muehlbauer contends that he has alleged causation by stating that he would not have purchased the vehicle had he known it was defective.

Defendant argues that neither damages nor causation has been adequately pled. Addressing the damages element, defendant contends that Muehlbauer cannot establish a loss if the vehicle is worth the value he paid. This argument depends on matters of fact that play no role on a motion to dismiss. It also relies on the rather implausible proposition that defendant's vehicle was priced to reflect the defect. A plaintiff, like Muehlbauer, sufficiently alleges that he has been damaged when he claims that he unknowingly purchased a defective vehicle. It is not necessary to include specific allegations regarding the precise value of the loss, as the damages inquiry typically follows a finding of liability.

Moreover, we find distinguishable Avery v. State Farm Mut. Auto. Ins. Co., 216 Ill.2d 100, 296 Ill. Dec. 448, 835 N.E.2d 801 (Ill. 2005), in which the plaintiffs claimed that the defendant violated the ICFA when it used non-original equipment manufacturer (OEM) replacement parts instead of OEM parts. The court concluded that the plaintiffs could not show actual damages because the use of non-OEM parts did not reduce the values of their

vehicles. *Id.* at 506. The non-OEM parts in <u>Avery</u> did not affect the safety of the vehicles. They were merely less expensive than OEM parts. In contrast, Muehlbauer alleges that due to the defect his vehicle inherently has a diminished value that was not reflected in the purchase price.

Turning to the causation element, defendant argues that Muehlbauer has not alleged that the non-disclosure actually caused the damages. Defendant relies on <u>L.R.J. Ryan v. Wersi Electronic GmbH and Co.</u>, 59 F.3d 52 (7th Cir. 1995), but that case is distinguishable on several grounds. In <u>Ryan</u>, the plaintiff claimed that the defendant, in violation of the ICFA, fraudulently induced him into purchasing a company's stock when it promised him that he would have exclusive distribution rights. *Id.* at 53. The plaintiff could only show that the false promises caused him to enter into a transaction in which he eventually lost money. *Id.* at 54. The transaction itself did not cause the plaintiff's loss, and the plaintiff could not show that his damages were caused by the false promises rather than external market factors. *Id.*

Muehlbauer alleges that he would not have purchased the vehicle had defendant disclosed the alleged defect. The defective condition existed when Muehlbauer purchased the vehicle, and manifested later in the form of unwanted ABS activation. It is true that external factors, such as salt and other corrosive agents, triggered the ABS sensor defect. But these external factors contributed to unwanted ABS activation only because of the design defect. Muehlbauer's allegations are thus distinct from those presented in <u>Ryan</u>, in which the plaintiff's losses could have been caused by external market forces that were exclusive of the defendant's false representations. Moreover, <u>Ryan</u> involved a summary judgment motion, and the plaintiff there, unlike Muehlbauer, was required to substantiate his allegations with facts.

An ICFA claim is a species of fraud, and must accordingly be pled with particularity

that satisfies Rule 9(b). <u>Eromon</u>, 351 F. Supp. 2d at 827; <u>Duggan v. Terzakis</u>, 275 F. Supp. 2d

968, 972 (N.D. Ill. 2003). To plead fraud with particularity, a plaintiff must provide the "who,

what, when, where, and how" of his claim. <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th

Cir.1990). Muehlbauer's allegations are sufficient in this regard. He has alleged that

defendant failed to disclose that the vehicles were defective, and the defect, which should have

been disclosed, is described with great specificity. He also alleges that defendant became

aware of the defect as early as January 1999, which was 18 months before he bought his truck.

Finally, Muehlbauer alleges that the defendant accomplished the fraud by not disclosing the

alleged defect.

## Sufficiency of Class Allegations

In addition to challenging the plaintiffs' substantive allegations, defendant also has

moved for a determination that the class alleged cannot be maintained on the grounds that it

is not manageable under the federal rules or circuit authority. Defendant also argues that

Muehlbauer seeks to represent individuals who lack standing, which precludes certification

of the purported class for the ICFA claim. In response, plaintiffs emphasize that they have

grouped the counts according to shared elements. They also offer an amended class definition

so that only individuals with standing are represented.

Plaintiffs do not object to our authority to review the class allegations at this early

juncture. That authority stems from Rule 23(c)(1)(A) and (d)(4). Rule 23(c)(1)(A) provides

that the court "at an early practicable time" must determine whether to certify the action as

a class action.[12] Rule 23(d)(4) authorizes the court to require "that the pleadings be amended

to eliminate therefrom allegations as to representation of absent persons." At this stage we are

---

[12] 2003 amendments added the quoted language, which replaced "as soon as practicable after commencement of an action."

not asked to certify the class. The parties have not engaged in discovery, and we do not fully

embark on the familiar certification inquiry set forth in Rules 23(a) and (b). Defendant argues

that the class allegations are facially deficient and no amount of discovery can save them.

Plaintiffs do not argue that in the absence of discovery the sufficiency of their allegations

should be confronted at the certification stage. *See* Miller v. Janssen Pharmaceutica Prods.,

L.P., 2006 WL 488636, 2006 U.S. Dist. LEXIS 11113, *2-4 (S.D. Ill. 2006). Instead, they

contend that their allegations are adequate, with one notable exception.

As set forth in the complaint, the class is defined as persons "who purchased or leased,

a 1999 through 2002 model year C/K series GMT800 platform vehicle equipped with an ABS"

at various times in 46 states and the federal district. CAC at ¶ 96. Defendant argues that a

class defined in this manner cannot satisfy Rule 23(b)'s superiority and manageability

requirements under In re Bridgestone/Firestone, Inc., 288 F.3d 1012 (7th Cir. 2002).

In Bridgestone, the court reversed a certification of two nationwide classes that

presented claims related to the failure of Firestone tires on Ford Explorer vehicles. The

plaintiffs suffered no physical injuries and sought compensation for the risk that their tires

would fail. *Id.* at 1015. Certification was improper on several grounds. Recovery for breach

of warranty and consumer fraud hinged on the laws of the consumer's states, and not the state

of the seller's headquarters. *Id.* at 1017. Thus, the laws of all 50 states were in play, which

rendered a single nationwide class unmanageable. *Id.* at 1018. Further, the claims thwarted

uniform treatment due to the individual consumer's varied uses of the Explorers and the 67

different tire specifications. In the court's view, these factors illustrated that a decentralized

process involving NHTSA regulation and tort litigation by injured persons was "far superior

to a suit by millions of *uninjured* buyers for dealing with consumer products that are said to be failure-prone." *Id.* at 1019 (emphasis in original).

In their response to defendant's motion, plaintiffs announce that they intend to amend their class definition so that it includes only those who have experienced unwanted ABS activation.[13] When the court in <u>Bridgestone</u> favored individual suits brought by injured parties, it meant tort actions brought by individuals with physical injuries. *Id.* Those individuals would generally be disinclined to join other plaintiffs in a class action. In this sense, the injury that plaintiffs assert is still dissimilar from that preferred in <u>Bridgestone</u>. Individuals may have suffered physical injuries as a result of unwanted ABS activation, but we do not know their number and if their individual tort actions would yield the accurate results and additional information contemplated in <u>Bridgestone</u>. *Id.* at 1020. Even though the plaintiffs' injuries are not on par with the personal injuries highlighted in <u>Bridgestone</u>, their allegations of actual damages are sufficient to state a claim. Moreover, the proposed amendment to the class definition will only include those who have experienced the defect, and will exclude those who can only say their vehicles are "failure-prone." *Id.* at 1019. But since this qualification is absent from the class allegations, they must be amended. *See* Rule 23(d)(4).

Even though the allegations are overbroad by including individuals who can, at most, claim a risk of ABS sensor malfunction, the class as alleged is not unmanageable under the additional reasons set forth in <u>Bridgestone</u>. The individual plaintiff's claims in <u>Bridgestone</u>

---

[13]Plaintiffs submit that they will amend the class allegations in paragraph 96 so that the class includes "all those who purchased or leased, a 1999 through 2002 model year C/K series GMT800 platform vehicle equipped with an antilock brake ("ABS") ... and who experienced unwanted ABS activation while the Vehicle was traveling at a speed of greater than 3.6 mph but less than 10 mph." Defendant asserts that it would not object to an amended complaint at this stage. Reply at 3 n.4.

were extremely fact-specific and varied greatly from one another. Bridgestone, 288 F.3d at 1012. Further, the Firestone tires presented numerous specifications. *Id.* Even though the alleged ABS sensor defect exists in different vehicle models, as plaintiffs describe the problem it is not subject to the variability presented in Bridgestone. We are not informed that there existed different versions of the Wheel Hub Bearing Assemblies and ABS systems that exhibited design-specific defects. *Compare* Benner v. Becton Dickinson & Co., 214 F.R.D. 157, 171-72 (S.D.N.Y. 2003). Nor is it alleged that the manner in which the air gap was fouled depended on the type of vehicle. Thus, it does not appear that a product-by-product analysis will be required. Moreover, here the value of each claim is minor relative to the costs of litigation.[14] *Compare* Matter of Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1299 (7th Cir. 1995) (observing that the claim of each class member was not tiny relative to costs of litigation in a mass tort case brought on behalf of hemophiliacs infected with the AIDS virus after receiving contaminated blood).

The lack of variability militates against disseminating and diversifying the decision-making process. Whereas the market model highlighted in Bridgestone would yield more efficient and accurate results in light of the facts in that case, we believe that decentralizing the process here would only produce redundancies because the claims, as alleged, are limited to the same defect and to those who have experienced the manifestation of that defect.

In Bridgestone, the nationwide classes failed to present common questions of law because the laws of all 50 states were at issue. Even though plaintiffs here seek to represent the citizens from the vast majority of states, they have grouped their claims according to common legal elements. Counts I through III each presents unjust enrichment claims, but on

---

[14] In addressing the actual damages component of his ICFA claim, Muehlbauer submits that the cost of repairing the defective Wheel Hub and ABS assembly is approximately $1,836 per vehicle.

behalf of citizens from different states. The states in Count I require proof of the same three elements: a benefit conferred upon the individual; that is at the plaintiff's expense; and under circumstances that would make defendant's retention unjust. In addition to those three elements, the states represented in Count II further require proof that the defendant appreciated the benefit conferred by the plaintiff. Lastly, the states in Count IV require the same elements of proof for an implied warranty of merchantability claim. Under these groupings, plaintiffs do not present a single nationwide class, and there is a predominance of common legal issues in each subclass. Plaintiffs have made a sufficient showing at this early stage that the litigants, as grouped, "are governed by the same legal rules." Bridgestone, 288 F.3d at 1015.

From our survey of the cases and jury instructions of the represented states that plaintiffs have submitted, we cannot conclude that their summation is incorrect. Neither does defendant take issue with plaintiffs' interpretation of the states' laws. We of course anticipate variations in the laws that ostensibly hew to the same standards of liability. But whether these differences destroy commonality is an issue for another day.[15]

Defendant also seeks to strike the single state class claim under the ICFA, on the ground that the purported class includes individuals who do not have standing because they have not suffered any actual damages. Plaintiffs' proposed amendment to the class definition addresses this objection. According to defendant, the class proposed in Count VI must fail because it includes "residents of the State of Illinois," and under Avery, 835 N.E.2d at 853-54, a private person may bring an ICFA claim only if the disputed transaction occurs primarily

---

[15] We emphasize that these observations as to the commonality of legal issues, like those as to the factual issues above and the single-state class claims below, rely on the limited material presented, consisting of the complaint, memoranda and exhibits.

and substantially in Illinois. We do not think it is necessary to re-plead on this point. Count VI is raised on behalf of all Illinois residents who are similarly situated to Muehlbauer. We take that to mean all those whose transactions primarily and substantially occurred in Illinois, reserving for another day the resolution of what that actually means in the context of this case.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied as to Counts I, II, III, IV and VI. Count V is dismissed without prejudice. The private attorney general claim, raised in paragraph 10 of the complaint, is dismissed with prejudice. The motion for a determination that the class alleged cannot be maintained is granted, and leave to amend is extended.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 15, 2006.