IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WAYNE MUEHLBAUER, et al.,          )
                                   )
            Plaintiff,             )
                                   )
    vs.                            )    No.  05 C 2676
                                   )
GENERAL MOTORS CORPORATION, )
                                   )
            Defendant .            )

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this proposed class action against defendant General Motors Corporation. Plaintiffs allege that GM-designed components for braking systems of vehicles they purchased or leased were defective and that GM failed to disclose the defect. That failure, they allege, unjustly enriched GM and breached implied warranties of merchantability. Defendant moves for summary judgment on the claim for breach of implied warranties of merchantability (Count IV). For the reasons stated below, we grant the motion.

## BACKGROUND

There are currently three named plaintiffs in this action[1], but only one, Corey Bisson, argues breach of the implied warranty of merchantability. In November 2004, Bisson purchased a used 2002 Chevrolet Silverado from Darling's Select, an auto dealership in Waterville, Maine (Bisson 6/6/07 dep., 45:7-13). At the time of the purchase Bisson was aware that the original manufacturer's limited written warranty had expired (id. at 93:5-9), and he

_____

[1] When this action originated there were five named plaintiffs. We dismissed Norman Soohoo and Wayne Meuhlbauer under Federal Rule of Civil Procedure 41(a)(1)(ii). See docket entries 99 and 126. Currently before the court is a motion by Patrick Duffy for leave to intervene as plaintiff. The court has not yet ruled on that motion. However, Duffy seeks permission to intervene only as to the unjust enrichment counts (Counts I and II). Therefore, the outcome of that motion has no effect on the disposition of defendant's motion for summary judgment on Count IV.

refused to purchase the extended warranty (*id.* at 66:11-22; 90:14-22). He understood that by refusing the written warranty he was purchasing the vehicle "as is" (*id.* at 91:23-92:2).

In June 2005, Bisson was driving the Silverado in his driveway and traveling at a speed of approximately four to five miles per hour, when the anti-lock brake system activated (*id.* at 30:10-21; 120:10:21). This unwanted activation resulted in an increased stopping distance and caused the vehicle to run into a building on his property (*id.* at 30:15-21). Bisson contends that the unwanted ABS activation on the Silverado is due to a defectively designed ABS, and as a result the Silverado was not merchantable at the time it was sold (2d am.cplt. ¶¶131-140).

Further, Bisson alleges that the defectively designed ABS was installed in other select GMT800 series platform vehicles from 1999 through 2002. He purports to bring Count IV individually and on behalf of similarly situated residents in 22 states, and purchasers of new vehicles in Texas. Under the relevant state statutes, Bisson alleges that the defective ABS made the vehicles unfit for their ordinary purposes of use and violated the implied warranty of merchantability.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When reviewing the facts, we may not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts. Celotex, at 255. Instead, we draw all inferences and view all admissible evidence in the light most favorable to the non-moving party. *Id.*

1. Whether a Warranty Exists

Before we analyze whether Bisson's claim satisfies the elements of breach of warranty,

we must first determine whether any warranty attached at the time Darling's sold the Silverado to Bisson. Bisson, recognizing that he disclaimed any express warranties when he refused to extend the expired manufacturer's warranty, instead argues that the purchase was subject to the implied warranty of merchantability. Whether the implied warranty of merchantability attached at the time of the sale to Bisson is a point of dispute between the parties.

Bisson brings his claim under Maine law. The State of Maine has adopted Article 2 of the Uniform Commercial Code. *See* Me. Rev. Stat. Ann. Tit. 11, §§ 2-102 *et seq.* As adopted, the Maine UCC requires that "[u]nless excluded or modified ..., a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *Id.* §2-314(1). But Maine does not extend implied warranties to goods that are purchased "as is." *Id.* § 2-316(3)(a). Bisson's testimony that he understood that by refusing the written warranty he was purchasing the vehicle "as is" would appear to end the dispute, but he correctly notes that Maine law contains an exception that prohibits sellers from disclaiming implied warranties on consumer goods. *Id.* § 2-316(5). Consumer goods are those goods "that are used or bought primarily for personal, family or household purposes." *Id.* Bisson contends that his vehicle, primarily used for personal purposes, qualifies as a consumer good and, therefore, the implied warranty of merchantability cannot be waived.

GM, in turn, draws our attention to an exception to the consumer goods exception. Under Maine's Used Car Information Act, as codified at Me. Rev. Stat. Ann. Tit. 10, §§ 1471-78, the exemption for consumer goods does not apply to used cars sold "as is." *See id.* §1473 ("The provisions of this chapter shall not be construed to limit or restrict in any way the rights

or warranties provided to persons under any other Maine law, except that Title 11, section 2-316, subsection 5 shall not apply to transactions under this chapter.").

Bisson argues that Maine has expressly rejected such disclaimers in the sale of used cars. As support, he relies on Maybury v. Quality Motors, Inc., No. CV 78-60, 1980 Me. Super. LEXIS 101 (Feb. 12, 1980). But Maybury does not stand for Bisson's proposition. In Maybury, the defendant argued that the UCIA was plaintiff's sole remedy for breach of warranty because for used car transactions the UCIA wholly displaced the implied warranties found in the Maine UCC. The court rejected this argument and specifically noted that the legislature did not intend the UCIA to supplant the warranties found in the Maine UCC. Moreover, the sale in Maybury was not "as is," and so the implied warranty of merchantability had not in any way been disclaimed.

We find more instructive a different Maine Superior Court case, Cole v. Farnham's Auto Sales, No. CV 90-79, 1990 Me. Super. LEXIS 140 (June 25, 1990). Although the judge in Cole found that an implied warranty of merchantability attached to the sale at issue, he also noted that it was possible to disclaim implied warranties. This possibility existed because § 1473 "circuitously preserved" a dealer's ability to disclaim implied warranties with regard to used car sales. We also note that the Maine Attorney General interprets the UCIA as allowing the disclaimer of implied warranties. *See* State of Maine, Office of the Attorney General, Consumer Law Guide, Chapter 4: Consumer Goods and Maine Express and Implied Warranty Laws, § 4.2, at http://www.maine.gov/tools/whatsnew/attach.php?id=27922&an=1 (last revised 04/07/08) ("The only exception to [the implied warranty of merchantability] is that used car dealers can disclaim your implied warranties when they sell you a used car "as is", without any express warranty.").

Bisson also argues that even if dealers may disclaim implied warranties on used car sales, GM may not because it is a manufacturer and not a dealer. GM concedes that under the UCIA it is a manufacturer, rather than a dealer. Neither party presents us with any authority that conclusively determines whether, under Maine law, manufacturers may disclaim implied warranties, and our independent review did not locate any. So, instead, we turn to the language of the statute.

The UCIA specifically defines the term "dealer." Me. Rev. Stat. Ann. Tit. 10, § 1471(2). Manufacturers are defined under the UCIA as a separate class called "sellers." *Id.* §1471(6-B). All of the substantive provisions of the act either mandate or prohibit specific conduct on the part of dealers when selling used cars to the public. *See generally id.* §§ 1474-78.[2] Based on the plain language of the UCIA, we find that the intent of the legislature was only to govern the actions of used car dealers. Although the specific language of § 1473 does not limit the ability to disclaim implied warranties to dealers, it follows from the entirety of the Act that such a limitation exists. This interpretation is consistent with the Maine Supreme Court's instruction that "[t]he UCIA will be interpreted liberally to carry out the legislature's beneficent purpose of protecting purchasers of used cars." Tanguay v. Seacoast Tractor Sales, Inc., 494 A.2d 1364, 1367 (Me. 1985) (citations omitted). Moreover, we note that this holding is consistent with the interpretation of the Attorney General of Maine. *See* Consumer Law Guide, Chapter 9: Consumer Rights When You Buy A Used Vehicle, § 9.8, at http://www.maine.gov/tools/whatsnew/attach.php?id=27927&an=1 (last revised 05/27/08)

---

[2] The UCIA does impose one affirmative duty on manufacturers. Section 1475(4)(B) provides that when a manufacturer sells a vehicle to a dealer, it must disclose whether it has repurchased that car under the "lemon law" of any state. This provision, however, does not regulate the conduct of a manufacturer with the public. Rather, it is a mechanism to provide the dealer with all the information it needs to make the required disclosures to the ultimate vehicle purchaser.

("While state law allows used car dealers to disclaim implied warranties, manufacturers cannot.") (citing Me. Rev. Stat. Ann. Tit. 10, § 1473). As such, the implied warranty of merchantability passes to Bisson because he is "a person whom the manufacturer . . . might reasonably have expected to use, consume or be affected by the goods." *Id.* Tit.11, § 2-318. *See also* Koken v. Black & Veatch Constr., Inc., 426 F.3 39, 51 (1st Cir. 2005) (holding that breach of the implied warranty of merchantability does not require privity of contract under Maine law).

## 2. Notice of Breach

Under Me. Rev. Stat. Ann. Tit. 11, § 2-314(2)(c), a good product must be fit for its ordinary purpose. Koken, 426 F.3d at 51. Customarily, a buyer who accepts tender of goods "must notify the seller of any breach within a reasonable time after he or she discovered or should have discovered any breach or be barred from any remedy." Sullivan v. Young Bros. & Co., Inc., 91 F.3d 242, 250 (1st Cir. 1996); Me. Rev. Stat. Ann. Tit. 11, § 2-607(3)(a). Notice to the seller is required in order "to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." *Id.* § 2-607 cmt. 4. Benefits of notifying the seller of the breach include preventing stale claims, allowing the seller to investigate the claims, providing the seller with an opportunity to cure, and encouraging negotiation and settlement between the parties. M.K. Assoc. v. Stowell Prod., Inc., 697 F. Supp. 20, 21 (D. Me. 1988). GM argues that because Bisson did not give notice of the ABS malfunction to either Darling's or GM, he has failed to provide notice as required for recovery under the implied warranty of merchantability.

In response, Bisson first argues that this court, in its May 15, 2006, order denying GM's motion to dismiss, conclusively determined that Bisson met the notice requirement, and that

GM should be barred from relitigating the issue. Bisson mischaracterizes our earlier order. When we denied GM's motion to dismiss, we held only "that plaintiffs have at least stated a claim that, through a number of consumer complaints and official investigations, defendant had 'early warning' of the breach. Whether or not notice is sufficient to satisfy section 2607 is an issue of fact." Muehlbauer v. General Motors Corp., 431 F. Supp. 2d 847, 860 (N.D. Ill. 2006) (citations omitted). GM is now free to argue that Bisson has failed to raise a genuine issue of material fact that the notice was sufficient under Maine law.

For the most part, GM's notice argument attempts to convince the court that the Maine UCC's notice provision is a condition precedent to any warranty claim, rather than an affirmative defense. As support, GM cites a series of cases in which Maine courts or courts applying Maine law found pre-suit notice sufficient to meet the notice requirement. *See, e.g.,* Crescent Lumber Co. v. Maine Packaging Equip., Inc., No. CV-95-212, 1995 Me. Super. LEXIS 449 (Dec. 20, 1995); Pease v. Dead River L.P. Gas Co., No. CV-74-20, 1979 Me. Super. LEXIS 141 (Sept. 24, 1979). But this approach focuses on too narrow a reading of our earlier order. In the May 16, 2006, order we noted that § 2-607(3)(a) has not been subject to extensive analysis by the Maine courts, and that it was possible that Maine courts would treat the notice requirement as an affirmative defense. What GM ignores is that we held, alternatively, that "the complaint does allege that the defendant was on notice of the alleged defect, and that a specific pre-suit complaint by Bisson to defendant is not required." Muehlbauer, 431 F. Supp. 2d at 857.

To the extent that GM argues that the Maine UCC requires individual notice from each potential plaintiff, one of the cases cited by GM, Sullivan v. Young Bros. & Co., 91 F.3d 242, 250-51 (1st Cir. 1996), undermines its argument. In Sullivan, the court, applying Maine law,

looked at the totality of information presented to the defendant, and concluded that the defendant had constructive knowledge of a product defect. As we stated in our earlier opinion, "[u]nder this approach the lack of a specific complaint from a particular customer should not eclipse the defendant's actual knowledge of a problem. Muehlbauer, 431 F. Supp. 2d at 857. *See also* Sullivan v. Young Bros. & Co., 893 F. Supp. 1148, 1159 (D. Me. 1995). Such an interpretation is consistent with Maine law, where notice need "merely be sufficient to let the seller know that the transaction is still troublesome and must be watched," and the notice requirement is not meant and should not function to deprive a consumer of a remedy. Me. Rev. Stat. Ann. Tit. 11, § 2-607 cmt. 4. GM has provided us no authority to challenge this interpretation of the notice requirement.

Bisson concedes that he did not notify Darling's or GM of the unwanted ABS activation and that he refused to partake in GM's recall remedy when GM notified him of it. But Bisson has provided an e-mail from Randy Leek, an engineer at GM, that acknowledges the ABS defect and notes that it "is responsible for a significant amount of warranty costs" (Tufaro Aff. Ex. 1).[3] Viewing the facts in the light most favorable to Bisson, as we must, it is possible that the trier of fact could find that GM was afforded sufficient notice that transactions involving vehicles with the faulty ABS were "still troublesome" and should "be watched."

3. Damages

The parties agree that an essential element of Bisson's action for breach of the implied warranty of merchantability under Maine law is that he prove that he suffered injury or damage that was proximately caused by the ABS defect (def's mo. at 17; plf's resp. at 7). *See*

---

[3] In a footnote in its reply brief, GM argues that Bisson's assertion in his statement of undisputed material facts that GM had actual notice of the design defect is improper because Bisson does not support the assertion with evidence and instead simply repeats the allegations of the complaint. We disagree. Bisson's Fact No. 10 cites to the Leek e-mail that is attached to the Tufaro affidavit as Exhibit 1. To the extent that GM disagrees with the assertion, that is an argument more appropriately made to a trier of fact.

*also* Me. Rev. Stat. Ann. Tit. 11, § 2-714 (discussing damages for breach of accepted goods).

GM argues that summary judgment is appropriate because Bisson cannot show economic

damages that were caused as a result of the defect.

Bisson purchased the Silverado in November 2004 for $13,950 (Bisson 6/6/07 dep., 45:7-

18). At the time, the vehicle's odometer had 57,952 miles on it (*id.* at 46:5-8). Approximately

one year later, after driving the vehicle over 11,600 miles, he sold it to Darling's for a trade-in

allowance of $11,000 (*id.* at 46:11-16; 73:2-8). Based on these facts, we cannot say Bisson

suffered economic damage.

Further, at the time of the sale to Darling's, the Silverado was subject to a voluntary

recall. Bisson could have opted for the recall remedy free of charge before the sale, and

Darling's had the same option after the sale. Bisson informed the Darling's sales

representative of the voluntary recall at the time of sale, but the sales representative gave no

indication that the recall would affect the value of the trade-in allowance (Bisson 6/6/07 dep.,

19:24-21:12). In fact, at the time of the trade-in, Bisson did not believe that the ABS defect

affected the value of the trade-in allowance (*id.* at 21:8-16).

Bisson argues that later, at his deposition, he testified that he now assumes that he was

given a lower trade-in allowance because the people in the industry knew that GM vehicles

were affected by the design defect (*id.* at 21:21-22:3). But that is supposition, not evidence.

*See* In re Cohen, 507 F.3d 610, 614 (7th Cir. 2007) (speculation is not evidence). Similarly,

Bisson's testimony that "the price may not have been as high" when he originally purchased

the vehicle (*id.* at 189:5-11) is a mere assumption, with no evidence to back it up.

Bisson notes that he is not a damages expert and that any statements he made

concerning damages are of limited value. This may be true, but it does not excuse his complete

failure to provide any evidence of economic damages proximately caused by the ABS defect.

Even if Bisson could not identify evidence of damages at his deposition, now is the time for him

to do so. Summary judgment is the "put up or shut up" moment in an action where a party

must identify the evidence it has that would convince a trier of fact. *See* Harney v. Speedway

SuperAmerica, LLC., 526 F.3d 1099, 1104 (7th Cir. 2008) (citations omitted). Bisson has "put

up" nothing and therefore summary judgment for defendant GM is appropriate on the breach

of implied warranty claim.

## CONCLUSION

For the forgoing reasons, GM's motion for summary judgment on Count IV is granted.


                                                JAMES B. MORAN
                                                Senior Judge, U. S. District Court

July 22 , 2008.