HHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAYNE MUEHLBAUER, COREY BISSON, RENEE FALES and CHARLES HEATH, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GENERAL MOTORS CORPORATION, <br><br> Defendant. | No. 05 C 2676 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this purported class action lawsuit against defendant General Motors, and allege that defendant-designed components for braking systems of vehicles they purchased or leased were defective. They claim that defendant, having failed to disclose the defect, has been unjustly enriched. Currently before the court are the following motions: plaintiffs' motion for class certification (dkt 111), defendant's motion to strike portions of plaintiffs' second surreply in further support of class certification (dkt 199), defendant's motion for sanctions due to plaintiffs' spoliation of evidence (dkt 146), defendant's motion for a protective order (dkt 168), defendant's motion for summary judgment on the remaining counts (dkt 190), a motion to intervene filed by Patrick Duffy (dkt 171), and a motion to intervene filed by Marc Podfigurny (dkt 211). For the reasons stated below, we grant defendant's motion for a protective order, deny plaintiffs' motion for class certification, and dismiss this suit for lack of jurisdiction. The remaining motions are denied as moot.

## BACKGROUND

Plaintiffs allege that defendant defectively designed the anti-lock braking systems (ABS) used in 1999 through 2002 model year C/K series GMT800 platform vehicles. They contend that the ABS allowed corrosion to contaminate the wheel-bearing hub assembly, which affected the ABS wheel speed sensors. The result was unwanted activation of the ABS at low speeds. The complaint details the alleged defect and relevant mechanical specifications with much greater specificity, but, for the purposes of these motions, further recitation is unnecessary.

Plaintiff Muehlbauer filed this suit on May 4, 2005, on behalf of himself and others similarly situated. On October 26, 2005, Muehlbauer filed a consolidated amended class action complaint (CAC) that joined three new named plaintiffs and asserted claims for breach of implied warranty, unjust enrichment, violation of the California Consumers Legal Remedy Act, and violation of the Illinois Consumer Fraud Act, on behalf of several distinct multi-state classes of persons "who purchased or leased, a 1999 through 2002 model year C/K series GMT800 platform vehicle equipped with an ABS." (CAC, ¶ 96). Plaintiffs' purported class consisted of all individuals who had purchased or leased one of the vehicles at issue, whether or not that person's vehicle had ever experienced unwanted ABS activation at low speed.

On December 21, 2005, defendant moved to dismiss all claims asserted in the CAC for failure to state a claim and failure to plead fraud with particularity. Defendant also moved for a determination that the class allegations could not be maintained. On May 15, 2006, this court granted in part and denied in part defendant's motion to dismiss and determined that the "all owner" class alleged in the CAC was improper under the Seventh Circuit's decision in In re Bridgestone/Firestone, Inc., 288 F.3d 1012 (7th Cir. 2002). However, based on

plaintiffs' representation that they would amend the class definition to include only those who had experienced the defect, and exclude those who could only say that their vehicles were "failure-prone," we granted plaintiffs leave to amend the complaint.

On June 13, 2006, plaintiffs filed their second consolidated amended class action complaint (SCAC). The SCAC alleges claims for unjust enrichment and breach of the implied warranty of merchantability on behalf of several distinct multi-state classes of persons "who purchased or leased a 1999 through 2002 model year C/K series GMT800 platform vehicle equipped with an [ABS] . . . and who experienced unwanted ABS activation while the vehicle was traveling at a speed of greater than 3.7 mph but less than 10 mph." (SCAC, ¶ 96). After a series of voluntary dismissals and other motions, the only three remaining named plaintiffs are Bisson, Fales, and Heath, and the only claim remaining in this litigation is plaintiffs' unjust enrichment claim, as detailed in Counts I and II.[1]

## ANALYSIS

### I. Motion for Protective Order

Before we examine the merits of class certification, we address one discovery matter. In early 2007, when class discovery in this case began, the parties negotiated the terms of an agreed protective order to govern the production and use of documents in this litigation. The order was entered on March 13, 2007 (dkt 92), and is of the standard type and restricts the use of any documents that the producing party designates as "confidential." The agreement also contains a provision allowing a party to challenge another's designation of documents as "confidential." Plaintiffs have challenged the designation of 11 documents, and pursuant to

---

[1] Plaintiffs grouped the purported class member states according to similarities in the elements required to state a cause of action for unjust enrichment.

the dispute resolution mechanism in the agreed order, defendant seeks judicial confirmation of the designation.

Rule 26(c) authorizes protection of "a trade secret or other confidential research, development, or commercial information." Fed.R.Civ.P. 26(c)(1)(G).[2] Even where parties stipulate to a protective order, we must independently determine if good cause exists for the issuance of a protective order. Jepson, Inc. v. Makita Elec. Works, Ltd., 30 F.3d 854, 858 (7th Cir. 1994). There is a strong presumption toward public disclosure of court files and documents. County Materials Corp. v. Allan Block Corp., 502 F.3d 730, 740 (7th Cir. 2007). But this interest does not always trump the privacy interests of the parties. If good cause is shown, the latter's privacy interests predominate in the particular case. Id.

The parties originally disputed 24 documents, but they inform us that they were able to resolve the status of 13 documents on their own. The remaining 11 documents can be loosely categorized into two groups. Documents 1, 2, 5 and 8 are charts summarizing the rate of specific customer complaints in different geographic regions for different time periods. Documents 3, 4, 6, 7, 9, 10 and 11 fall under the broad category of defendant's internal evaluation reports regarding the investigation into the unwanted ABS activation problem, its attempts to isolate the problem and engineer a solution, cost projections, and potential business strategies.

The protective order does not preclude plaintiffs from using these documents – or any confidential documents for that matter – in this litigation. It only requires that such documents be kept under seal. But plaintiffs argue that these documents do not qualify as

---

[2] On December 1, 2007, a general renumbering of the Federal Rules of Civil Procedure took effect. Prior to that date, Rule 26(c)(1)(G) was known as Rule 26(c)(7). No substantive change in the rule accompanied the renumbering.

confidential under the agreement or the rules, and moreover it is a matter of public safety that they be released. We disagree with the last premise. Defendant has not kept the existence of the ABS defect a secret from the public, such that disclosure of these 11 documents may alert unsuspecting vehicle owners. To the contrary, defendant has worked with the National Highway and Transportation Safety Administration (NHTSA) and crafted a voluntary recall notice. *See* Def.'s Memo. Opp. Class Cert. Ex. 5 ¶ 17, Ex. F. A simple Google search on the terms "GM," "ABS," and "recall" demonstrates that information about the recall is widely available on the internet (*see, e.g.*, www.consumeraffairs.com/news04/2006/02/gm_regional_recall.html (last visited Mar. 3, 2009)), including in the NHTSA's own searchable vehicle recall database *(see* www.safecar.gov).

In addition, this case is only in the class discovery stage. Secrecy at this stage, while not carte blanche, is more acceptable than during trial, or as part of dispositive motions, where the documents become part of the judicial record. Baxter Int'l Inc. v. Abbott Labs., 297 F.3d 544, 545 (7th Cir. 2002). Indeed, this circuit recognizes the benefits of protective orders during the discovery phase in promoting disclosure and facilitating the litigation process. *See* Kynicki v. Falk II, 983 F.2d 74, 75 (7th Cir. 1992). At this early stage we are confident that the 11 documents in question fall under Rule 26's protection for "commercial information" and "other confidential research." In light of our decision on class certification, which disposes of this case, and the fact that we did not need to rely on any of the documents in question to reach our class certification decision, we grant defendant's motion for a protective order.

II. Certification[3]

---

[3] Defendant moves to strike certain arguments made by plaintiffs in their second surreply in further support of class certification because the arguments raised new issues. Defendant essentially responded to the arguments in its motion to strike; therefore, the motion is denied as moot.

When we granted plaintiffs leave to amend the class allegations in the complaint, we noted that at that early stage the facts before us were not similar enough to the facts in Bridgestone to defeat the prospect of class treatment. Muehlbauer v. General Motors Corp., 431 F. Supp. 2d 847, 872 (N.D. Ill. 2006). We did not, however, definitively comment on the feasibility of class treatment. To the contrary, we specifically explained that our comments relied "on the limited material presented." *Id.* at n.15. We find now, upon deeper examination, that there are significant problems with the new class that plaintiffs propose and deny the motion to certify the class.

The class action mechanism is a powerful tool "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997). The power of the class mechanism must be balanced against the sometimes intense pressure to settle that class certification can exert on defendants in large class actions. *See* In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1298-99 (7th Cir. 1995) (discussing the balance between the "undoubted benefits of the class action that have made it an authorized procedure in the federal courts," and the pressure placed on defendants to settle, rather than roll the dice at trial); *see also* Bridgestone, 288 F.3d at 1015-16 (explaining that interlocutory review under Rule 23(f) of a class certification order was appropriate because "[a]ggregating millions of claims on account of multiple products manufactured and sold across more than ten years makes the case so unwieldy, and the stakes so large, that settlement becomes almost inevitable – and at a price that reflects the risk of a catastrophic judgment as much as, if not more than, the actual merit of the claims"). It is because of this delicate balance that the Seventh Circuit has cautioned the district courts to exercise "caution in class certification generally."

Thorogood v. Sears, Roebuck & Co., 547 F.3d 742, 746 (7th Cir. 2008).

Rule 23 allows a member of a class to sue as a representative of the class only if (1) joinder of all members is impractical because the class is so numerous, (2) questions of law or fact are common to the class, (3) the representative's claims are typical of those of the class, and (4) the representative will fairly and adequately protect the interests of the class. Rule 23(a); Oshana v. Coca-Cola, Co., 472 F.3d 506, 513 (7th Cir. 2006). In addition, plaintiffs must also show that the action is maintainable under one of the three elements of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). In this case, plaintiffs request certification under Rule 23(b)(3), which requires that common questions of law or fact predominate over questions affecting only individual members and that the class action is the best method for fairly and efficiently adjudicating the controversy. Rule 23(b)(3); Amchem, 521 U.S. at 615-16. Finally, there is an implied requirement that plaintiffs be able to show that the proposed class "is indeed identifiable as a class." Oshana, 472 F.3d at 513.

The party seeking class certification has the burden to establish that certification is proper. *Id.* at 513. "Similarities of claims and situations must be demonstrated rather than assumed." Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 677 (7th Cir. 2001). We need not accept all of the complaint as true when we undertake our analysis. *Id.* at 675-76. Rather, we "should make whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 676. We have broad discretion to determine whether the proposed class meets the requirements of Rule 23. Redmon v. Uncle Julio's of Ill., Inc., 249 F.R.D. 290, 293-94 (N.D. Ill. 2008).

Although we would normally begin our analysis with the Rule 23(a) prerequisites, we instead begin with the Rule 23(b) requirements because we find this issue dispositive. In our

examination of the Rule 23(b) requirements, we should consider (1) the interests of the class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in managing a class action. Fed. R. Civ. P. 23(b)(3). We find that concerns regarding the third and fourth factors preclude certifying the classes outlined in the complaint.

Plaintiffs' claims of unjust enrichment are made under state law, which, in this multi-state class action, may vary. If a plaintiffs' choice of state law "conflicts in any material way with any other law which could apply," then class treatment is improper. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 816 (1985). Plaintiffs have omitted any discussion of Illinois' choice-of-law provisions in favor of a discussion of the similarities among the various states' laws. Plaintiffs argue that they have grouped the states represented in the class by legal similarity, and they apparently believe this obviates the need for a choice-of-law analysis. We have concerns about this way of proceeding, but because we find that in the end the law of the grouped states is not similar enough, the issue is of no import.

Courts have long held that the laws of unjust enrichment vary from state to state and therefore are not appropriate for nationwide class action treatment. See, e.g., Vulcan Golf, LLC v. Google, Inc., 254 F.R.D. 521 (N.D. Ill. 2008); Ronat v. Martha Stewart Living Omnimedia, No. 05-520-GPM, 2008 WL 4963214 (S.D. Ill. Nov. 12, 2008); Siegel v. Shell Oil Co., ___ F.R.D. ___, 2008 WL 4378399 (N.D. Ill. Sept. 23, 2008); Lilly v. Ford Motor Co., No. 00 C 7372, 2002 WL 507126 (N.D. Ill. Apr. 3, 2002); Clay v. American Tobacco, Co., 188 F.R.D. 483 (S.D. Ill. 1999). Plaintiffs argue that these cases are not applicable here because

they dealt with national class actions instead of class actions where states were grouped by legal similarity. This interpretation is too narrow. The cases do not stand for the proposition that only national class actions for unjust enrichment are inappropriate; rather, the cases explain that *multi-state* class actions for unjust enrichment are inappropriate because the individual states' laws regarding unjust enrichment are too nuanced to lend themselves to class treatment. That the cases we cite happen to deal with nationwide class actions, as opposed to class actions subdivided into multi-state groups, does not render them inoperable here.

"[U]njust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone among the fifty states." In re Sears, Roebuck & Co. Tools Marketing & Sales Practices Litigation, Nos. 05 C 4742 & 05 C 2623, 2006 WL 3754823, at *1 n.3 (N.D. Ill. Dec. 18, 2006). The fact that we are dealing with 38 states here, instead of 50, does not eliminate completely the varying interpretations. Judge Gilbert, in Clay, provides an overview as to the differences among the states:

> The actual definition of 'unjust enrichment' varies from state to state. Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud. Other states only allow a claim of unjust enrichment when no adequate legal remedy exists. Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense.

188 F.R.D. at 501 (internal citations omitted). Of the differences that Judge Gilbert highlighted, plaintiffs' chart purporting to demonstrate that the states are grouped by legal similarities (*see* Pls.' mot. class cert., app. A) addresses only the doctrine of unclean hands. But the chart does so in a cursory fashion, simply showing that all 50 states and the District of Columbia allow a defense of unclean hands. It does not address whether the requirements

necessary to establish the defense vary from jurisdiction to jurisdiction.[4]

The district court for the Eastern District of Arkansas recently undertook a detailed analysis of the states' different approaches to unjust enrichment. *See* Thompson v. Bayer Corp., No. 4:07CV00017 JMM, 2009 WL 362982, at *4-*6 (E.D. Ark. Feb. 12, 2009). The significant differences Judge Moody found in that case are instructive here as well. For example, California, Hawai'i, Missouri and New York require that there be no adequate remedy at law before allowing a plaintiff to proceed with an unjust enrichment claim. *See* Ramona Manor Convalescent Hosp. v. Care Enters., 177 Cal. App. 3d 1120 (Cal. App. 4th Dist. 1986); Porter v. Hu, 116 Hawai'i 42 (Haw. App. 2007); Bennett v. Crane, 220 Mo. App. 607 (1926); Featherstonhaugh v. Roemer, 279 A.D. 2d 783 (N.Y.S. 2001). Yet, plaintiffs include all of those states in Count I, along with Arkansas, which has no such requirement. Thompson, 2009 WL 362982, at *6.

Count II fares no better than Count I. Thompson explains that although the general elements of unjust enrichment may be the same for all of the states listed in Count II, courts in different states have different requirements to fulfill those elements. Minnesota requires that the defendant be "unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W. 2d 302,

---

[4] Indeed, plaintiffs' entire examination of the legal similarities among different jurisdictions is done in such a cursory fashion. The main comparison is a one-page summary document that lists the 50 states and the District of Columbia. *(See* Pls.' mot. class cert. app. A.) It groups each jurisdiction into one of three categories based on the general elements needed to prove unjust enrichment in that state. The chart then explains that all jurisdictions treat unjust enrichment as equitable in nature and all recognize the affirmative defenses of unclean hands, waiver, and equitable estoppel. This one-page summary is followed by six appendices that list one to two cases that purportedly stand for one of the earlier assertions (*e.g.* Appendix E purports to list state cases that demonstrate that waiver is an affirmative defense to a claim of unjust enrichment). These appendices also include hard copies of the cited cases. Absent, however, is any discussion of the merits of the listed cases or variations in the requirements necessary to prove each element or the affirmative defenses. In light of Clay, and the other cases that discuss the differences in unjust enrichment law that exist among the states, plaintiffs' analysis is woefully inadequate.

306 (Minn. 1996). The courts of Virginia have limited claims of unjust enrichment "to those arising from: money paid by mistake; failed consideration; money got through imposition; extortion; oppression; or any other undue advantage taken of the claiming party's situation, where the advantage is contrary to laws made for the protection of persons under those circumstances." Qualichem v. Xelera, Inc., 2003 WL 23162331, at *3 (Va. Cir. Ct. 2003). However, Wisconsin, also a part of Count II, has no such requirement of unlawfulness. *See*, *e.g.*, Ludyjan v. Continental Cas. Co., 308 Wis. 2d 398, 404-05 (Wis. App. 2008) (explaining that when permanent improvements that add value are made to an owner's land with the owner's knowledge and consent, unjust enrichment may apply).

We do not recount the above examples in an attempt to list all the differences in the various states' requirements to establish unjust enrichment. We simply mean to demonstrate that if plaintiffs had looked deeper than the general elements, they would have discovered that there are differences among the states with regard to unjust enrichment that preclude class treatment –whether as a national class or in a class subdivided into two groups. The nuances of state law in this area are simply too varied. As such, we, like our colleague Judge Manning, find no basis on which to differ from the well-supported and detailed analyses of other district courts on this issue. *See* Vulcan, 254 F.R.D. at 533.

We also note that even if the legal issues here were substantially similar, class certification would not be appropriate due to factual differences among the class members. In their motion for class certification, plaintiffs assert that common issues of fact predominate because "much of the Court's time will be devoted to determining . . . whether the Vehicles are defective." (Pls.' mot. class cert., p. 24.) While we accept that a major question in this litigation will be whether the ABS is defective, there will also be factual questions specific to each

potential class member. For example, the manner in which the vehicles were acquired will be relevant. Owners who purchased their vehicles new may have different claims than owners who purchased their vehicles used. In the purchase of a used car, any number of factors may affect the purchase price. For example, no benefit attributed to defendant could be considered unjust where the purchaser paid a significantly under-market price to a third party reseller for some reason unrelated to the ABS defect, such as damage from a prior collision.

Moreover, we share the concerns of Judge Murphy in <u>Ronat</u>, that it would be nearly impossible to fashion a remedy in this case without individualized inquiries into each claim. 2008 WL 4963214, at *6 (citing <u>Pastor v. State Farm Mut. Auto. Ins. Co.</u>, 487 F.3d 1042, 1047 (7th Cir. 2007)). Relief under unjust enrichment is equitable in nature. Much like the glass tabletops in <u>Ronat</u>, the defect here manifests at a different time in each vehicle's useful life. The rate of failure is tied to corrosive environmental conditions, such as rain, snow, and use of road salt. Vehicles used in the harsh winter climates of states like Wisconsin and Minnesota may develop the contaminating corrosion that fouls the ABS wheel speed sensors at a much quicker rate than vehicles in the desert climate of Nevada. For that matter, vehicles located within the same state may develop the defect at different times, based on any number of other factors, such as how frequently the vehicle is driven or whether the vehicle is parked on the street throughout the year, or garaged. Those vehicle owners who suffer unwanted ABS activation toward the beginning of their vehicle's useful life have far different claims than those owners whose cars do not manifest the problem until near the end of their useful life.

Then there is the matter of the recall remedy. Defendant, after identifying the unwanted ABS activation problem and conferring with the NHTSA, issued a voluntary recall targeted at 20 states and the District of Columbia. *See* Def.'s Memo. in Opp. to Class Cert. Ex. 5 ¶ 17, Ex.

F. Further, dealers outside the targeted recall area are authorized to make the recall repairs to vehicles identical in description to the vehicles included in the recall, if they show evidence of the same condition that is the subject of the recall. *See id.* at ¶ 23, Ex. G. The recall procedure consists of applying Zinc-X Corrosion Inhibitors to the affected areas in order to inhibit the development of rust and corrosion. *See id.* Ex. D. Plaintiff contends that the recall is insufficient because Zinc-X only provides protection for up to two years and defendant only offers one free application of the remedy to eligible vehicles. It may be that the recall procedure is insufficient, but, at the very least, its existence will complicate matters. The court will need to make individual factual inquiries into each class member's claim: Did the class member receive the recall procedure? If so, did it correct the problem for any period of time? These questions will affect the amount of equitable relief awarded. Due to the size of the potential class here,[5] any benefit of class action treatment would be quickly eliminated. *See* Pastor, 487 F.3d at 1047.

Now that the extent of the individual factual inquiries that will be necessary in this case is clear, we find that the market model highlighted in Bridgestone will yield more efficient and accurate results than the centralized class action model. *See* Bridgestone, 288 F.3d at 1019. Any benefit attained by centralizing the question of whether the ABS is defectively designed will be outweighed by the need to hold thousands of separate evidentiary hearings on each class member's claim. Therefore, we find that because common questions of law and fact do not predominate over questions affecting only individual members, that class treatment is not the best method for fairly and efficiently adjudicating this controversy.

---

[5] Plaintiffs report that "there are thousands of purchasers and lessees of the Vehicle who have experienced a manifestation of the defect located in the Class states." (Pls.' class cert. mot., p. 11).

III. Alternative Classes

In the event that we deny the proposed class certification, plaintiffs ask in the alternative that we certify two individual state classes. In the first, plaintiff Fales would represent individuals who purchased or leased their vehicle in California. In the second, plaintiff Bisson would represent individuals who purchased or leased their vehicles in Maine. Reducing the classes to a single state each does not overcome the factual differences among class members that we outlined above. *See, e.g.*, Siegel v. Shell Oil Co., No. 06 C 0035, 2009 WL 449073, at *4 (N.D. Ill. Feb. 23, 2009); Ronat, 2008 WL 4963214, at *6. The court would still be required to conduct separate evidentiary hearings to establish the circumstances of each class member's vehicle purchase and what relief would be equitable. Such person-by-person hearings would not only be unmanageable, but would quickly eliminate any benefit of class-action treatment. *See* Andrews v. Chevy Chase Bank, 545 F.3d 570, 577 (7th Cir. 2008) ("If the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see how common issues predominate or how a class action would be the superior means to adjudicate the claims.").

IV. Subject Matter Jurisdiction

Our decision to deny class certification prompts a new question: whether we retain jurisdiction in this matter now that we have denied class certification. The parties have not addressed this issue in their briefs, but because we are mindful that we are a court of limited jurisdiction, we answer the question.

Throughout this litigation, the parties have addressed this court's jurisdiction in a cursory manner. The original complaint, the CAC, and the SCAC, state that "[t]his Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332." (Cplt., ¶ 6;

CAC, ¶ 9; SCAC, ¶ 10). Defendant's answer to the SCAC is no more detailed, it simply admits plaintiffs' jurisdictional allegation (Ans., p. 4). Because there is no federal question implicated in the complaint, and the named plaintiffs' claims are far below the $75,000 minimum for traditional diversity jurisdiction, we assume that plaintiffs base federal jurisdiction on the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §§ 1332(d)(2), (d)(5), and 1453(a). CAFA provides district courts with jurisdiction over class actions involving at least 100 potential class members in which the aggregated claims of individual class members exceeds $5,000,000 and at least one class member is a citizen of a state different from at least one defendant. *See* 28 U.S.C. § 1332(d)(2)(A); (d)(6).

It appears that no circuit court of appeal has directly addressed the issue of whether CAFA continues to provide a basis for subject matter jurisdiction after a court denies class certification.[6] Those district courts that have examined the issue do not agree. *Compare* Colomar v. Mercy Hosp., Inc., No. 05-22409-CIV, 2007 WL 2083562 (S.D. Fla. July 20, 2007); Garcia v. Boyar & Miller, P.C., Nos. 3:06-CV-1936-D, 3:06-CV-1937-D, 3:06-CV-1938-D, 3:06-CV-1939-D, 3:06-CV-2177-D, 3:06-CV-2206-D, 3:06-CV-2236-D, 3:06-CV-2241-D, 2007 WL 1556961 (N.D. Tex. May 30, 2007); Genenbacher v. CenturyTel Fiber Co. II, LLC, 500 F. Supp. 2d 1014 (C.D. Ill. 2007) (finding CAFA jurisdiction continues after denial of class certification), *with* Salazar v. Avis Budget Group, Inc., No. 07-cv-0064-IEG (WMC), 2008 WL 5054108 (S.D. Cal. Nov. 20, 2008); Ronat, 2008 WL 4963214; Jones v. Jeld-Wen, Inc., No. 07-22328-CIV, 2008 WL 4541016 (S.D. Fla. Oct. 2, 2008); Clausnitzer v. Federal Express Corp., No. 06-21457-CIV,

---

[6] In Falcon v. Philips Elecs. N. Am. Corp., 489 F. Supp. 2d 367 (S.D.N.Y. 2007), the district court held that it no longer had subject matter jurisdiction after denying class certification, and dismissed the case because not only could no class be certified at that time, but no class could be certified "in the foreseeable future," as well. 489 F. Supp. 2d at 369. The Second Circuit affirmed the judgment, but did not directly address the question of subject matter jurisdiction. Falcon v. Phlips Elecs. N. Am. Corp., No. 07-2877-CV, 2008 WL 4820527 (2d Cir. Nov. 5, 2008).

2008 WL 4194837 (S.D. Fla. June 18, 2008); <u>Arabian v. Sony Elecs., Inc.</u>, No. 05cv1741 WQH (NLS), 2007 WL 2701340 (S.D. Cal. Sept. 13, 2007); <u>Giovanniello v. New York Law Publ'g Co.</u>, No. 07 Civ.1990(HB), 2007 WL 2244321 (S.D.N.Y. Aug. 6, 2007); <u>Falcon v. Philips Elecs. N. Am. Corp.</u>, 489 F. Supp. 2d 367 (S.D.N.Y. 2007); <u>Gonzalez v. Pepsico., Inc.</u>, No. 06-2163-KHV, 2007 WL 1100204 (D. Kan. Apr. 11, 2007); <u>McGaughey v. Treistman</u>, No. 05 Civ. 7069(HB), 2007 WL 24935 (S.D.N.Y. Jan. 4, 2007) (finding that denial of class certification destroys diversity jurisdiction under CAFA).

Those courts that find that subject matter jurisdiction survives the denial of class certification, explain that while CAFA modified the requirements for meeting diversity jurisdiction for class actions, it did not create a new basis for jurisdiction. *See* <u>Genenbacher</u>, 500 F. Supp. 2d at 1016. These courts treat the denial of class certification as a change in a jurisdictional fact and follow the basic jurisdictional principle that diversity jurisdiction is determined at the time the complaint is filed, and subsequent changes to jurisdictional facts do not destroy diversity jurisdiction. *See id.*; *see also* <u>Colomar</u>, 2007 WL 2083562 at *2; <u>Garcia</u>, 2007 WL 1556961 at *6. A further concern of the courts retaining jurisdiction is that class certification orders are interlocutory and subject to change. <u>Genenbacher</u>, 500 F. Supp. 2d at 1017.

Courts taking the opposite view treat the denial of class certification as a legal determination, rather than a subsequent change in a jurisdictional fact. Essentially, the denial of class certification becomes "a determination there is not–and never was–CAFA diversity jurisdiction." <u>Salazar</u>, 2008 WL 5054108 at *5 (citing <u>Arabian</u>, 2007 WL 2701340 at *5). *See also* <u>Jones</u>, 2008 WL 4541016 at *3; <u>Clausnitzer</u>, 2008 WL 4194837 at *4. Accordingly, these courts held that Rule 12(h)(3)'s requirement that a district court dismiss an action "at any

time" that it determines it lacks subject matter jurisdiction compels them to dismiss. *See* Arabian, 2007 WL 2701340 at *5. Recognizing the interlocutory nature of class certification orders, courts applying this premise have limited its application to factual circumstances in which there is no foreseeable possibility that plaintiffs may obtain certification in the future. *See* Salazar, 2008 WL 5054108 at *5; Jones, 2008 WL 4541016 at *4; Clausnitzer, 2008 WL 4194837 at *4; Arabian, 2007 WL 2701340 at *5; Falcon, 489 F. Supp. 2d at 368.

After examining the views of the other district courts, and comparing the facts of those cases to the facts here, we believe that we must dismiss this action. Our determination that it was not appropriate to certify a class in this matter was not based on facts occurring subsequent to the filing of the SCAC. We find that there was a structural defect in the proposed class that existed at the time plaintiffs filed the SCAC. We agree with the court in Salazar that this situation is akin to "diversity cases in which the court learns a party is actually from Arizona and not California, thereby destroying diversity." 2008 WL 5054108 at *6. In this case a class action did not exist at the time the SCAC was filed and we therefore lack subject matter jurisdiction. We also note that the defect in the proposed class is incurable -- no hypothetical named plaintiff can overcome the problems with predominance and manageability as outlined above. As such, there is no foreseeable possibility that plaintiffs may obtain certification in the future.

Moreover, the interpretation we adopt today is consistent with the language of the statutes that provide CAFA jurisdiction. CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). The term "class certification order" is defined as "an order issued by a court approving the treatment of some or all aspects of a civil action as a class action." *Id.* at

§ 1332(d)(1)(C). Because we denied class certification, there has been no class certification order as contemplated by the statute. And because we have finally determined the class issue, there will be no class certification order forthcoming. *See* Ronat, 2008 WL 4963214 at *7.

V. **Remaining Motions**

Also pending before the court are two motions to intervene, defendant's motion for summary judgment, and defendant's motion for sanctions as a result of spoliation of evidence. The resolution of the motions to intervene makes no difference in our analysis of class certification. As we have said repeatedly throughout this opinion, the problems with the proposed class run far deeper than the named plaintiffs. The two individuals who seek permission to intervene do not solve the problems with predominance and manageability that we have identified. Because these motions do not affect our class decision, and in light of our decision to dismiss this action for lack of subject matter jurisdiction, the four remaining motions are denied as moot.

## CONCLUSION

For the foregoing reasons, we grant defendant's motion for a protective order and deny both defendant's motion to strike and plaintiffs' motion for class certification. Further, we dismiss this action for lack of subject matter jurisdiction. All other pending motions are denied as moot.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

March 31, 2009.
MAR 31 2009
3-31-2009